Daniel, J.
delivered the opinion of the court:
In the case of Casamajor v. Strode, 1 Cond. Eng. Ch. R. 195, the broad doctrine is laid down by the vice chancellor, Sir John Leach, that a purchaser, under a decree for the sale of lands, though not a party to the cause, does, by the act of purchase, submit himself to the jurisdiction of the court as to all matters connected with that character. The same doctrine is stated by Judge Story in the case of Wood v. Mann, 3 Sumner’s R. 318, and by Chancellor Walworth in the case of Requa v. Rea, 2 Paige’s R. 341. And in the second volume of Daniel’s Ch. Pr. 1460-61-2, it is stated, that after the report of a sale by a master is confirmed, there are, according to the English practice, three modes of remedying the failure of the purchaser to comply with the terms of the sale. If it appears that the purchase has been made by a person unable to perform his contract, the parties interested in the sale, may, upon motion, obtain an order, simply discharging him from his purchase, and directing the estate to be resold. If the purchaser is responsible, the court will, if required, make an order that he shall within a given time pay the money into court; and if the purchaser, on being served with the order, fails to obey it, his submission to it may be enforced by attachment. Oían order will be made for the estate to be resold, and for the purchaser’to pay the expenses arising from the non-completion of the purchase and the resale, and *292 any deficiency in price arising upon the second sale. Such an order (the author proceeds) was made by Lord (Nottingham in Harding v. Harding, 18 Eng. Ch. R. 514, after consultation with the other judges of the court; and although in that case the purchaser was a defendant in the cause, it does not seem that that fact was considered as necessary in order to justify the making of the order.
In Lansdown v. Elderton, 14 Ves. R. 512, the purchaser was compelled to complete his purchase by the second of the courses just mentioned, namely, by an order to pay in his purchase money within a given period, or stand committed. Since the date of that decision (1808) it has been the constant practice of the English courts of chancery to make such orders; and repeated instances may be found in the reports of our sister states, in which the precedent has been approved and acted upon. Anderson v. Foullce, 2 Harr. & Gill R. 346; Gordon v. Sims, 2 McCord’s Ch. R. 151; Brasher v. Cortlandt, 2 John. Ch. R. 505.
It is argued, however, by the counsel for the appellant, that as judicial sales in England are always made for cash, the practice regulating such sales there has no application to cases where, by the terms of the decree, the sale is upon a credit, and the payment of the purchase money is to be secured by the bond of the purchaser. And in support of this view, he cites the case of Richardson v. Jones, 3 Gill & John. R. 163, in which it was held by the Court of appeals of Maryland, that where a bond is given to the trustee, for the purchase money under an order of sale in chancery, requiring a bond to be given, and the sale has been confirmed, the purchaser and his sureties cannot be compelled to pay the bond by attachment. Buchanan, Ch. J. thus states the reasons why, in his opinion, the practice in respect to sales on credit should be different from that in respect to sales for cash. “When a sale. *293 is made under a decree or order in chancery, and no bond or security is given for the payment of the purchase money, a practice has grown up in chancery, and sanctioned by this court, in Anderson v. Foulke, 2 Harr. & Gill 346, to compel the purchaser to complete his purchase by an order on him in a summary way to pay or bring the money into court, and that, from a necessity arising out of the peculiar character of such transactions. Ho action at law will lie to enforce a decree in chancery within the territorial j urisdiction of the court in chancery. An order of the Court of chancery ratifying such a sale is considered as amounting to a decree for the payment of the money ; and if that court could not enforce the execution of it, it could not be enforced at all.” “ A court of chancery having a clear right to enforce its own decrees, and an order of ratification being considered as amounting to a decree for the payment of the purchase money, a purchaser who neglects or refuses to comply with such decree, is in contempt, and may be dealt with accordingly by an order in the first instance (in this state) to bring the money into court as preparatory to an attachment.” “ But where a bond is given to the trustee for the purchase money under an order of sale from chancery requiring bond to be given, the terms of sale are complied with, and a contract entered into, not with the' court, but with the trustee, on which, after ratification, he has a full and perfect remedy at law for enforcing the payment of the purchase money, that is recognized and sanctioned by the order of ratification, which, in such case, is not a decree for the payment of the purchase money, but a confirmation only of what has been done. And though the contract of sale being perfected by the order of ratification, it is thereby said to become a sale by the court; yet the terms of sale being complied with and *294 the purchase completed, by giving to the trustee, as required, a bond to secure the purchase money, the purchaser is not in contempt by the non-payment of it. The contract on the bond not being with the court, but with the trustee under the sanction of the court, the remedy is by suit on the bond in a court of law; and chancery cannot enforce it as a mere bond for the payment of money, by which the original simple contract of purchase is extinguished. And if the payment of the bond, as such, cannot be enforced by a bill in chancery, a fortiori, can it not be enforced in a summary way by an order to bring the money into court.”
However satisfactory such reasoning may seem when the effort is to enforce the payment of the purchase money by attachment, I do not perceive how it can be made to bear on the case in hand. By the decree under which the purchase in this case was made, the terms of sale were, one-fourth of the purchase monejr for cash, and as to the residue, upon a credit of one, two and three years, payable by equal installments, the purchaser giving bond with security for payment of the deferred installments, and the title of the land to be retained as security for the payment of such deferred installments, until the same shall be fully paid. All of the bonds for the deferred installments were due and unpaid, and judgments at law upon two of them had proved unproductive. And in this state of things, the proceeding against the purchaser asked and obtained, was not a proceeding by way of attachment, but a rule summoning him to appear to show cause why the land sold him by the commissioners should not be resold to pay the unsatisfied installments of purchase money due by him and his securities! and why a decree over should not be rendered against him for so much of said unpaid purchase money as the said land, upon a resale, might not pay off *295 and discharge. And the interlocutory decree, from which the appeal is had, is simply a decree for the resale of the land.
Let it be that there is no decree in the cause ordering Clarkson to pay in the purchase money, and that so, he cannot strictly be treated as in contempt; still, the credit which was allowed having expired, and his bonds being wholly unpaid, he is in default in respect to the purchase money. Having by his purchase submitted himself to the jurisdiction of the court in the suit, he has not placed himself beyond the reach of the court by giving the bonds. The court still holds or controls the title, and he still owes the purchase money. In a contract of the like kind between Clarkson and a party acting in his own behalf, the execution, by Clarkson with his securities, of a bond to a third person for the benefit of the vendor, would not deprive the latter of a right to resort to a court of equity for full relief in the case of a failure by Clark-son, on the expiration of the credit, to pay the bond. The right of the vendor, in such case, to sue upon the bond at law, if he pleased, would not in any degree conflict with his right to have a decree for the sale of the land and a personal decree against Clarkson for any balance due after applying the proceeds of sale to the satisfaction of the unpaid purchase money. In cases of judicial sales in England, the court is regarded in a certain sense as the owner and principal, and the master as the mere agent; and the contract is treated as a contract substantially between the purchaser on the one side, and the court as the vendor on the other. Savile v. Savile, 1 P. Wms. R. 745; Anderson v. Foulke, already cited, 2 Harr. & Gill 346. This view is conceded by Ch. J. Buchanan in his opinion in the case of Richardson v. Jones, to be correct in regard to sales for cash; and I cannot perceive how *296 the nature of the contract as a whole is altered, or the relation of the court as vendor to the purchaser is changed, by the fact that the sale is on credit, and that the purchaser has executed his bonds to the commiSsioner for the deferred installments. It is true, that by the execution of the bonds the purchaser has placed it in the power of the court to cause the collection of the purchase money by a suit upon the bonds at law. The jurisdiction of a court of law in respect to the bond, however, is not in exclusion of the jurisdiction of a court of equity to compel a complete performance of the contract in all its parts. The bond is but an additional security for the purchase money; and the power of the court to sue on the bond is in aid of and not in conflict with its other powers to compel the execution of the contract. Such clearly would be the law as between two parties occupying strictly the relation to each other of vendor and vendee ; and I can see no reason why the same rule would not hold as between the court and the purchaser at a judicial sale.
And if the court, in the case of a failure, by the purchaser at a cash sale, to pay in the money, may without requiring the parties to the cause to file a bill, proceed, by rules and orders to sell the land, and hold the purchaser accountable for the balance due, after applying the proceeds of sale to the discharge of the purchase money, it is difficult to see why the like proceeding may not be resorted to in the case of a sale for credit, when the credit has expired and the purchase money remains unpaid. Such rules and orders would have the same foundations to rest upon in the one case as in the other.
The power of the court thus to enforce the execution of the contract is, I apprehend, wholly independent of its power to proceed against the purchaser as *297 in contempt. In the case of Harding v. Harding (already referred to), Lord Cottenham said, that there was no reason why a person purchasing under a decree of the court should not be held to his contract, as much as a person purchasing in the ordinary way: That the court might enforce the vendor’s lien against the estate : and that an order to hold the purchaser to his contract and to resell the estate in the mean time, was in strict analogy to the course the court takes against a purchaser in the ordinary case. And in the very learned and able opinion of the chancellor (Bland), delivered on rendering the decree in Anderson v. Foulke, from which the appeal in that case was taken, he treats the practice in question as one so well established that its propriety could be no longer questioned. 2 Harr. & Gill 368.
I find nothing in conflict with these views, in the decision made by the Special court in the case of Gross v. Pearcy, 2 Patt. & Heath 483; to which reference was made by the counsel for the appellant; though it is true that Judge Thompson, in delivering the opinion of the court, whilst admitting the convenience of such a practice, expresses strong doubts, whether, “ tested by the usages and practice of courts of equity in Virginia,” the court had in such cases power to proceed by rule against a purchaser and his sureties, to decree a resale. The proceedings in that case in the Circuit court were, I think, clearly erroneous upon the merits; and I do not understand the decree of the Special court reversing those proceedings, as going to the length of deciding that a court of equity had no power in any case to order a resale upon rule. And with very high respect for the learning and experience as a chancellor, of the judge who delivered the opinion in that case, I still think that the power in question is one in strict harmony with the principles *298 applicable to the constitution and practice of a court of equity, and essential to the convenient and efficient dispatch of its business.
I do not mean to say that in all cases of the kind the proceeding should be by a rule rather than by a bill. It is not difficult to conceive of cases in which there might grow up, or be developed, between the direct parties to the cause and the purchaser, equities of a character such as to require that they should be discussed and considered upon regular and formal pleadings, original or supplemental. It is, however, but reasonable to believe that in a majority of cases little else would be attained by requiring the parties to go through the steps of a regular suit, instead of proceeding by a rule, except delay: delay, which, whilst furthering no just end or object of the purchaser, would work inconvenience and injustice to those entitled to receive the proceeds of the sale.
A rule in such a case apprises the purchaser of the nature of the demand against him as fully as a bill could do. And the only additional office that a bill could perform, would be to recite, in a more formal manner, matters which he already knows; or which the law presumes that he already knows. If he has any cause to resist the demand, he can set it forth as fully in an answer to the rule as in an answer to a bill. And if in his answer to the rule he should show any reason why there should be no resale of the property, it would be just as incumbent upon the court to allow him an opportunity to bring forward his proofs as it would have been, had the same matter been averred in an answer to a bill.
In the case before us, the purchaser appeared to the rule, Sled his answer, and went into the examination of witnesses for the purpose of proving the justice of the causes which he assigned why he should not be *299 subjected to the order and decree asked against him. There is nothing to show, and indeed it is not'suggested, that he has, by the summary character of the proceeding, been precluded from making any resistance or defence to the decree rendered, which he would or might have made in the course of a formal^ suit.
I see no error in the proceedings, and am of opinion to affirm the decree.
Decree affirmed.