Anderson, J.,
delivered the opinion of the court.
Joseph Dickinson Thorp, at the June term, 1870, of the circuit court of Fairfax county, filed his petition in a cause depending in said court, wherein Reginald Fairfax was plaintiff and Benjamin Thornton and others were defendants, claiming to have acquired certain liens upon the lands of Benjamin Thornton, which had been affirmed by a decree in said cause, and for the satisfaction of which, together with other liens thereon, the said lands were decreed to be sold. At the sale Joseph Thornton became the purchaser at the price of $47,474.70, and complied with the terms of the sale by making the cash payment and executing bonds for the deferred payments. The decree for the sale was pronounced at the June term, 1866, and the sale was made on the 17th clay of July following, which was confirmed by a subsequent decree of the comí, and the purchaser required to pay his bonds for the deferred payments as they fell due to the receiver of the court. The petitioner asks that the receiver be required to report what amount of the purchase money, if any, had been paid to him, that the same *677 be applied to the satisfaction of the lien which he had acquired and which had been passed upon by the court, that a resale of the lands for so much of the purchase money as remained unpaid be directed, and that other commissioners be appointed to make the sale in the place of two of them, who had died since the sale.
It was competent for the petitioner, though not a party to the suit, but who had acquired, subsequent to the bringing of the suit, the liens of those, who were parties, to ask the court by petition, or by motion to require a report from the receiver, showing the amount of the purchase money, if any, that was in bis hands, and to apply it in satisfaction of the liens, according to their priorities, as had been adjudicated, and to direct a resale of the land for the balance of the purchase money due pursuant to the decree of sale. It was only asking the court to execute its decree. 27or was it necessary that he should have proceeded by bill for that purpose, or to have made the purchaser a party defendant to his petition, or to have required him to answer. He was a qinsi party to the suit, and subject to the jurisdiction of the court, (Clarkson v. Read & als., 15 Gratt. 288), and must be held to have known the terms of the decree unde]’ which he purchased, which required a resale of the land if the purchase money was not paid. The validity and priority of the liens had already been • adjudicated, and Thorp only asked that the decree should be carried into execution, and sot out in his petition only what was necessary to show that he had an interest which entitled him to move in the matter.
It was of no interest to the purchaser as such, whether the petitioner or the parties litigant were entitled to the liens, and there was no contest between them. The question whether the lands should be resold was unaffected by the question, if there had been such, whether *678 the liens belonged to'the parties litigant, or to Joseph Thorp, who claimed to have acquired them. If the proceeding of Thorp was to assert a claim against parties to the
suit, wlfose interests he claimed to have acquired subseduent the institution of the suit, and which claim was disputed by them, then it would have been proper for him to have asserted his claim by supplemental bill, or by an original bill in the nature of a supplemental bill. But they did not contest his right, and the matters relied upon by Joseph Thornton in resisting the resale were extraneous to the issues of the pending suit, and were matters which it devolved on him to show.
But before there could be a decree of resale it was proper and necessary that the purchaser should have notice of the proceeding. The practice which has received the santion of this court is to proceed by the service of a rule on the purchaser to show cause why the lands should not be resold. And upon the filing of Thorp’s petition and the report of the receiver, showing that the purchase money had not all been made, the court might have directed the rule. That does not appear to have been done, but the purchaser had notice of the proceeding, and came forward to show cause in his own chosen way. There was no need, therefore, for a rule. He appeared by counsel; he claimed to be the holder of the securities himself, and the right to set them oil against his bonds for the balance of purchase money, and contested the petitioner’s right to them. He took depositions and cross-examined the petitioner’s witnesses; he appeared before the master, by counsel, and excepted to his report; he appeared in court, by counsel, in support of his exception, and had the report recommitted. In a word, by his counsel in court and out of court, in every way he thought advisable, he asserted his claim and resisted Thorp’s. He might have moved the court *679 for leave to answer Thorp’s petition, if he desired to do so; or he might have filed a supplemental bill, or an original bill in the nature of a supplemental bill, and put the matters in issue on which he relied and which rested with him, and made Thorp and Rittenhouse, Fant & Co., and others defendants, and compelled them to answer on oath, and in that mode contested Thorp’s claim and asserted his own, if he wished to have the benefit of his •own answer or of theirs. But he preferred to assert his •claim and to show cause against a resale in a different mode. He made no objection to the mode by which the •court proceeded, but acquiesced in it and adopted it as the mode of asserting Jiis claim and resisting a resale, and he is estopped now to object to it.
It appears from the record that the liens or securities in ■question did belong at one time to Joseph Thornton. They were assigned and tranferred to him in 1861 by Sweeney, Rittenhouse, Fant & Co., who then held them. In the fall of 1862 he became again indebted to said firm on account of gold transactions, and delivered to them the aforesaid securities as collateral security for any balance he might own therein, which they held until the 5th of December, 1863, and then, in payment of the balance he was owing them, he drew a bill of exchange, bearing date December 5th, 1863, at sixty days’ sight, in favor of said firm, on Beuj. Thornton, Holt Hall, near Market Harbors, Leicestershire, England, for £4,519 fis. 6d. (in American currency, '$33,544.44.) which he delivered to them with a part of the above securities attached as collaterals; and also on the same day he drew another bill at ninety days’ sight on the said Benjamin Thornton in favor of said firm, which he delivered to them, for £1,406 7s. Id.—being $10,438,27 in American currency—for the debt they had acquired by assignment from the Bank of the Old Dominion, which was secured *680 by a deed of trust upon tlie lands in question, which they required him to pay, and which they attached to the said last mentioned bill with the deed of trust securing it. All the securities claimed by Thorp as liens upon the’ land, and reported as such by the commissioners, and confirmed by the court, were attached to one or the other of said bills of exchange. Each bill and the securities, attached were placed in an envelope and forwarded by Rittenhouse, Eant & Co. to Lockwood & Co., Yew York. These bills were each of them accepted by the drawee, Benjamin Thornton, payable at Messrs. Barclays & Co., bankers. London: were endorsed by Rittenhouse, Eant k Co: “Pay to Lockwood & Co., or order,” and were endorsed by Lockwood & Co.: “Pay to Messrs. Baring Brothers & Co., or order,” and were endorsed by Baring Brothers & Co.: “Received payment, London,” of date, the one 22nd February, 1864, and the other 24th March, 18G4.
The money with which the bills were paid was advanced by the said Thorp, at the request of the said Joseph Thornton and Benjamin Thornton; and the bills,, together with the securities attached to them as collaterals, were delivered to him pursuant to the instructions given by Joseph Thornton to his brother Benjamin, for securing the repayment to him of the said sums of money which he had advanced in payment of the said bills, with interest. These collaterals constitute the liens upon the lands in question, which are reported by the-commissioner as valid liens upon the said lands.
The court is of opinion, that they were acquired by said Thorp by assignment of Joseph Thornton, or by Rittenhouse & Co., with the assent of said Joseph Thornton, as valid securities for the moneys he had advanced for the said Joseph Thornton, and by his request in payment of the bills of exchange which he had drawn on his. *681 brother, Benjamin Thornton, and which he had acceptéd for the accommodation of the drawer; that they are valid liens upon the lands in question, for the satisfaction of which, together with other liens, they were decreed to be sold, and that the said Joseph Thornton is clearly not entitled to set them oft’ against his bonds for the purchase money; but that the said Thorp is entitled to be substituted to the rights and remedies of the original holders of said securities against said lauds, or the proceeds of the sale thereof.
The court is of opinion, that the contract of loan was an English contract. It was contracted in England, with a resident of England and a subject of the Crown; the money was advanced in England and was payable there, and must be controlled by the laws of England; and usury having been abolished in England by 17 and 18 Victoria, ch. 90, the contract cannot be held to be usurious. The appellee only claims the money he advanced, with six per cent, interest.
The court is further of opinion, that although the stipulation in the contract that if the securities should overpay the money advanced by Thorp, with interest thereon, the said Thorp should he entitled to retain them until other claims he held against Benjamin Thornton were satisfied, was bad; the said Benjamin having no authority from his brother Joseph to pledge the securities for such purpose; that the deposit was nevertheless good for the money Thorp advanced at the request of said Joseph Thornton to pay the bills, which were in fact drawn for his accommodation, he having no funds in the-drawee’s hands. And for the same reason, that the bills were for his accommodation, it was not necessary that they should have been protested and notice thereof given to him to fix his liability. And this being a proceeding to enforce the collateral securities, it was not incumbent on the *682 creditor primarily to pursue his remedy at law on the bills, but his remedy for that purpose was peculiarly in a court of equity, which only could enforce his securities. An jie pUrgued his remedy in both forums at T^ie same bune, though he could have only one satisfaction.
The court is also of opinion that Davis was not a necessary party. lie was a pendente purchaser, if a purchaser at all. Commissioner Dulaney, who united in the deed to him, had no authority to convey the title; and the commissioners are expressly required by the decree to retain the title until the purchaser shall have paid all the purchase money, a large amount of which is still due and unpaid He is charged with knowledge of want of authority in the commissioner to convey. Hess & al. v. Rader wife, 26 Gratt. 746, and Erwin's adm'r v. Lloyd, decided at this term. The status of Kittenhouse, who claims to have been assignee of Davis, is no better. He is a party to the suit and member of the firm of Hittenhouse, Dant & Co., and charged with notice of the existence and binding force of the said liens held by Thorp. '■
The court perceives no error in the decree of the circuit court, and is of opinion to affirm the same.
Decree affirmed.