## Richmond.

### HURT v. JONES AND WIFE.

#### March 10.

1. A purchaser of land under a decree of a court of equity, after the sale is confirmed, is the equitable owner of the land, subject to be compelled to comply with his contract by payment of the purchase money.

2. When such a purchaser fails to comply with his contract, and the court directs a resale of the land, it is resold as the land of the purchaser, and at his risk. If, on such resale, it does not bring enough to discharge the unpaid purchase money of the former sale, and the costs and expenses of the resale, he is liable for the deficiency. If it brings more than enough for these purposes, he is entitled to the surplus.

3. Under a decree in a suit for partition, M bought the land for $7,000, and the sale was confirmed. He paid no part of the purchase money, but went into bankruptcy, giving in the land as part of his assets, and the debt of $7,000 as one of his liabilities. Subsequently M and his assignee in bankruptcy, with the sanction of the bankrupt court, conveyed their interest in the land to H, on the consideration that H should pay to the parties entitled the said $7,000, and this H does. HELD: H has a valid equitable title to the land.

4. Upon the failure of M to pay the purchase money there was a decree appointing H a commissioner to resell the land, and whilst such commissioner he made the arrangement with M and his assignee in bankruptcy, and he paid all the other parceners their shares of the $7,000, retaining the one-sixth to which his wife was entitled, and they conveyed all their rights and interest in the land to H; and this was reported to the court, was approved, and confirmed; and H was authorized to retain his wife's share of the money. The wife of H afterwards died, never having given birth to a child, and L, a sister, was her heir. HELD:

    1. That the fact that H was a commissioner to sell the land did not avoid his purchase from M; and the parties having all that they were entitled to claim, cannot object to it.

2. The court in the partition suit having confirmed what was done, that cannot be called in question in another suit.

3. The one-sixth interest of the wife of H passed by the sale in the suit for partition; and her interest therefore was her share of the purchase money retained by H under the decree of the court. *Quœre:* Whether under the amended act of February 28, 1866 (Acts of 1865–66, ch. 82; Code of 1873, ch. 124, § 12), it passes to her heir at law.

4. The bill by L being purely for partition of the land, not noticing the suit in which the land had been sold, and the court holding that L has no title to the land, she is not entitled under the prayer for general relief to have a decree against H for the money, even if L is entitled to it; nor is it a case in which the plaintiff will be permitted to file an amended and supplemental bill, to recover the money. But this bill will be dismissed without prejudice.

This was a suit in equity in the circuit court of the county of Pittsylvania, brought in August, 1876, by John E. Jones and Lucy C., his wife, against John L. Hurt. The bill charges that on the 24th of September, 1872, Mrs. Nannie C. Hurt, the wife of John L. Hurt and sister of the plaintiff, departed this life without heirs of her body, leaving the said Lucy C. Jones her sole surviving heir at law. That as heir of their father, C. G. Clemmit, the said Lucy and Nannie were entitled to one-third of a tract of four hundred and twenty-one acres of land in the said county, the residue belonging to the distributees of Charles Clement, deceased. That about the year 1869 or 1870 all the parties in interest in said land, save the said Nannie C. Hurt, sold and conveyed their shares in said tract of land to the said John L. Hurt, who is now in possession of the entire tract, and entitled by purchase to the same, less one-sixth interest therein, of which his wife Nannie C. died seized; which interest she did not and could not dispose of by deed or will during her lifetime, and which at her death, she being a married woman, without issue or heirs of her body, descended to the said female plaintiff as her next of kin and heir at law, under the statute

Hurt v. Jones and Wife.

of descents. They do not know whether said land can be judiciously divided in kind, so as to cut off one equal one-sixth part in value, and it may be necessary to sell the whole in order so get a fair and judicious distribution of the proceeds. And they pray that the court may decree a sale or division of said tract of land, and the interest of which Nannie C. Hurt died seized therein, together with the rents and profits accrued thereon since her death, to the plaintiffs; that all necessary accounts may be taken, and for general relief.

Hurt pleaded and also answered. The ground of defence was: That in a suit in equity brought in 1863 by Vincent Witcher and his wife, who was Jane A. Clement, which was revived in her name after the death of Witcher, against the other heirs of Charles Clement, among whom was the plaintiff Lucy C., then a widow, and Nannie C., the wife of the defendant, for the division or sale of the said land, a decree was made for its sale; that the first sale of the land was vacated by a decree in 1866, and said Hurt was appointed to sell it; that Hurt sold it in 1867 to John W. Motley, for $7,000, on certain credits agreed on by the parties, of whom said Lucy C. was one; that this sale was reported to the court; that in November, 1867, the said sale was confirmed, and said Hurt was appointed a collector to collect the purchase money from Motley, to retain one-sixth part thereof in right of his wife, and to pay to the other heirs their several shares, said female plaintiff among the rest; that Hurt reported that Motley had paid but $4,000, and had gone into bankruptcy; that by a decree made at the May term, 1869, this report was confirmed, and at the same term the plaintiff, Mrs. Witcher, filed an amended bill setting out what had been done, and making the said heirs, and Fletcher Watson, the assignee in bankruptcy of Motley, defendants; that at the same term of the court, by consent of parties, it was decreed that Hurt should re-

sell said land at the risk of said Motley, privately or pub-
licly; that Hurt reported to the court that he had not re-
sold the land, as he had purchased it himself from the
parties, and paid the entire purchase money, except $800,
of the share of the female plaintiff; that Motley, when he
went into bankruptcy, gave in this land as a part of his
property, and gave in the debt of $7,000 as one of his debts;
that Hurt, being in treaty with the other heirs for the pur-
chase thereof at said price of $7,000, the assignee of Motley
obtained from the bankruptcy court an order authorizing
him to ratify said purchase, and Motley and wife, and Wat-
son, as assignee, then conveyed to Hurt all their right, title
and interest in this as well as other lands mentioned in
the deed; that Hurt thereupon paid to the respective par-
ties the said sum of $7,000, with interest, and had received
conveyances from all the heirs, including the female plain-
tiff, except said Hurt's wife; and that in June, 1870, the
court made a decree in which, reciting that it appeared
from the said deeds that the interest of all the parties who
have any claim to the said land have been sold and con-
veyed to the said John L. Hurt (except that to which he is
entitled in right of his wife Nannie C.), whereby the said
John L. Hurt has become entitled to the whole of the said
tract of land, and the objects of this suit being accom-
plished, the court confirming the said sales and conveyances
to the said John L. Hurt, and all the orders and decrees
heretofore made in the cause, doth order that this suit be
discontinued and stricken from the docket.

There were depositions taken in the cause by the defend-
ant Hurt, to sustain the statements in his answer, and also
to prove that his wife Nannie C. was informed of the pen-
dency of the case of Witcher against Clement's heirs, and
her concurrence in its objects, and also to prove an offer to
her by the judge to settle $1,250 of the purchase money to
her separate use, which she declined; but the evidence was

excepted to by the plaintiffs, and was not considered by this court.

The cause came on to be heard on the 9th of August, 1877, when the court was of opinion that the defendant John L. Hurt acquired no other interest in the portion of land to which his wife Nannie C. was entitled than a right to the possession, use and enjoyment during the life of his wife, who died 24th December, 1872, never having had issue; that her portion descended to her sister, the female plaintiff in this suit, who was her only heir at law, which was worth $1,250; which amount the plaintiffs are satisfied to take for it, and made a decree that unless said Hurt, or some one for him, shall pay to the plaintiffs the said sum of $1,250 with interest, &c., from the 24th of December, 1872, within sixty days from the date of the decree, commissioners named should go upon the premises and assign to the female plaintiff one-sixth part of said four hundred and twenty-one acres of land, if such division can be made without injury to the ownership of the other five-sixths of said land; if said one-sixth part cannot be so assigned in kind without prejudice to the other five-sixths, that the commissioners shall make report thereof to the court. And it was further decreed that upon the payment by Hurt of the said sum of $1,250 as aforesaid, the plaintiffs shall convey by deed with general warranty said one-sixth interest in said four hundred and twenty-one-acre tract of land to the said John L. Hurt; and there was a decree for the costs against Hurt. And thereupon Hurt applied to a judge of this court for an appeal and *supersedeas;* which was awarded.

*Ould & Carrington,* for the appellant.

*E. E. Bouldin, Tredway & Scruggs,* for the appellees.

BURKS, J., delivered the opinion of the court.
VOL. LXXV—44.

It is conceded that the late wife of the appellant (Hurt) was entitled in fee simple to an equal undivided sixth part of the four hundred and twenty-one acres of land in the bill and proceedings mentioned, and as confessedly she was never divested of the legal title in her lifetime, it is clear that at her death intestate, and without issue, it descended to the appellee Mrs. Jones, her sister and only heir at law. Upon this title it is that Jones and wife claim the one-sixth part of the land and bring their bill for partition.

The appellant, while admitting that the title at law may have passed by descent to the female complainant, yet contends that it is held by her subject to his right in equity to call for it—that while she may have the legal title, he is the complete beneficial owner by purchase under proceedings of a court of competent jurisdiction had in his wife's lifetime. If this defence is made out, the complainants cannot have partition upon the strength of a bare legal title. They are in a court of equity asking relief, and their legal rights must be controlled by the principles applicable to the administration of justice in that forum; and in such a case, instead of being aided in the enforcement of a barren title, it should rather be the pleasure of the court, if in its power, to compel them to surrender the title they may have to the real owner.

When and as soon as a valid contract is made for the sale of land, equity, which looks upon things agreed to be done as actually performed, considers and treats the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor. 1 Sugden on Vendors, 191 (bottom). The purchaser is deemed and treated as the equitable owner of the land; and subject to the lien for the unpaid purchase money, the title being retained, the equitable estate of the purchaser is alienable, devisable, and descendible in like manner as real estate held by legal title. 1 Story's Eq. Ju. §§ 789, 790; 2

Id. §§ 1212, 1217; *Lewis* v. *Hawkins*, 23 Wall. U. S. R. 119, 125, and authorities there cited.

A contract for sale under a decree in chancery is governed by the same principles. As soon as the sale is confirmed by the court, there is a completed contract, the bidder becomes a purchaser, and is thenceforth regarded and treated as the equitable owner of the land, with the right reserved to compel him to comply with his contract by payment of the purchase money. One of the modes of compelling payment, on default made, is to order a resale of the land. In such case, the former sale is not set aside, but the land is resold as the land of the purchaser and at his risk. If on such resale, it does not bring enough to discharge the unpaid purchase money of the former sale, and the costs and expenses of the resale, the purchaser is held for the deficiency. If, on the other hand, it brings more than enough for those purposes, he is entitled to the surplus; for, as long as the sale stands, it is his land (bound for the purchase money), and the proceeding to enforce payment, whether by bill, or, in the more summary way, by rule, is substantially a proceeding for the specific performance of a contract. 2 Dan. Ch. Prac. (4 Amer. Ed. Perkins), 1275, 1282; *Clarkson* v. *Read and others*, 15 Gratt. 288; *Yancey* v. *Mauck and others*, *Id*. 300, 306, 307; *Long and others* v. *Weller's Ex'or and others*, 29 Gratt. 347, 355, 356.

According to these principles, as soon as the sale to Motley was confirmed by the court, he became in equity the owner of the land with a lien resting upon it for the purchase money. He had an *equitable estate*, and if he had proceeded to comply with his engagement by paying the purchase money into court, or into the hands of a receiver authorized to collect, he would have acquired a complete *equitable title* to the entire tract of land ; that is, the right to call for the legal title, without condition, of the parties to the suit, including Mrs. Hurt ; and a deed to him by a spe-

cial commissioner appointed and empowered by the court to convey under the statute (Code of 1873, ch. 174, § 7), would have passed the title of all the parties.

So, when Motley was adjudged a bankrupt, his equitable estate, which was alienable, was vested by operation of law in his assignee, who might have gone on under Motley's contract, if he had deemed it judicious, to discharge the lien by paying the purchase money, and have acquired the complete legal ownership.

Under the arrangements made, as we construe them, the purchase by the appellant from Motley and his assignee and the conveyance from them, with the sanction of the court of bankruptcy, substituted him to all the rights and liabilities of Motley as a purchaser under the decree of the court. He acquired Motley's equitable estate, and came under obligation to discharge his liabilities as purchaser. He very promptly paid to all the parties (except his wife) their respective shares of the purchase money, and took deeds from them acknowledging payment and conveying their interests in the land. There was a balance due the female appellee (then a widow) in her own right, which was afterwards satisfied. He thus acquired the legal title of all the parties, except his wife. The decree which confirmed the sale to Motley also appointed the appellant a receiver to collect the purchase money, and directed him to retain one-sixth part in right of his wife. That decree was never set aside, and the resale, which was ordered to enforce it, was never made, because the appellant evidently acquired Motley's interest and completed his contract of purchase.

Thus, the appellant was permitted to retain his wife's share of the purchase money, presumptively with her consent, as she never applied to have it secured or settled to her separate use, and incontestably so, if we are permitted to consider the proofs offered on that point. Whatever

may be the legal effect upon the rights of parties to this money by the husband's retention of it with the sanction of the court, it is certain the court considered that he had acquired his wife's interest in the land. The decree of July, 1870, adjudicates that he is "entitled to the *whole* tract of land." The exception in the decree cannot, from its very terms, apply to his wife's interest; it can only apply to the interest which he held as tenant of the freehold by the marital right during the coverture, and even that exception is inaccurate, as this interest had been sold to Motley and the assignee in bankruptcy. The court rendering that decree had indisputable jurisdiction of the subject matter and the parties, the decree is final in its nature, has never been appealed from or reversed, cannot be collaterally assailed for error, if error it contains, and is therefore conclusively binding in its adjudications, as long as it is in force, upon all the parties to the cause and their privies, and consequently, upon the appellees, Jones and wife. The court, from inadvertance, or, it may be, from a supposed lack of power, or because a deed was deemed unnecessary, or from some other cause not apparent in the record, did not direct the conveyance of the wife's title to her husband as purchaser. We apprehend that it was competent for the court to have ordered such conveyance by a commissioner under the provisions of the statute already cited (Code of 1873, ch. 174, § 7), and that such conveyance would have effectually passed the wife's title. Although, however, no deed was ordered or made, *the right* was definitely settled, and such determination is equivalent in equity for most purposes to a conveyance.

The objection that at the time the appellant became the purchaser of the land he was the commissioner of the court to make the resale, can avail nothing, under the facts of the case. It is admitted to be the rule that ordinarily a commissioner to sell is not allowed to purchase the sub-

ject, either directly or indirectly. Such a purchase, how-ever, is not absolutely void, but voidable only at the elec-tion of any party interested in the land. *Howery vs. Helms and others*, 20 Gratt. 1. No objection or exception to the appellant's purchase was made or taken by any party, but, on the contrary, it was approved and ratified. Indeed, there could have been no good cause for any such objection. The full amount of the purchase money, for the payment of which the resale was ordered, was assured and paid to the parties entitled, and they could have received nothing more on a resale, if made; for the surplus, if any, would have belonged to Motley or his assignee in bankruptcy.

We are of opiuion, for the reasons stated, that the ap-pellees have no beneficial estate or interest in the land in question, and therefore, that the decree of the circuit court ordering partition is erroneous. If, however, partition had been proper, the provision in the decree, as a proposition of the complainants, allowing the defendant to take the female complainant's share of the land by paying the sum stated, could not have injured the defendant, as it was wholly optional with him whether he would accept the proposition or not.

But it is contended earnestly for the appellees, that if they are not entitled to an interest in the land and to partition, they are nevertheless entitled to Mrs. Hurt's share of the money retained by the appellant under his purchase; and it is insisted that it shall be so decreed by this court in this cause. This claim is founded mainly, if not entirely, on section 12, ch. 124, of the Code of 1873, which provides that "what may be received" under that chapter, or under the chapter (120) relating to partitions, "for the real estate of an infant, insane person, or married woman, sold or divided, or so much thereof as may remain at his or her death intestate, if he or she continue until death incapable, from any cause, of making a will, pass to those who would have been en-

titled to the land if it had not been sold or divided." It will be seen, upon examination, that this section, as embodied in the Code of 1860, related only to what was received for the real estate of an infant or insane person, and that it was amended and re-enacted as amended, February 28, 1866 (Acts of 1865-66, ch. 52), so as to embrace in its provisions a "married woman."

The question, as presented under the amended statute in its relation to a married woman, is a very interesting and important one, of the first impression here, and has been argued by the counsel on both sides with much learning and ability; but, under the pleadings in this cause, we do not find it necessary, nor do we deem it proper, to decide it.

The bill of the complainants is purely a bill for partition—for partition strictly and only, or for what is admissible under the statute (Code of 1873, ch. 120, § 3), if partition be impracticable or inconvenient—namely, for sale of the whole subject and a division of the proceeds among the parties entitled, according to their respective rights. Such is the particular relief specially prayed, and the general prayer is in the usual form. There is not in the whole bill, from the beginning to the end, the remotest allusion to or the faintest intimation of the purchase of Mrs. Hurt's interest in the land by her husband, nor is there the slightest claim to her share of the purchase money asserted or even suggested. In fact, no mention whatever is made of the suit, and the proceedings therein, under which the appellant claims title. Extending to the appellees all the indulgence which the most liberal rules of practice at this day would warrant, it is impossible, without a total disregard of the plainest and most essential principles of pleading, to grant them the special relief now prayed at the bar, but not in the bill, even if we thought them entitled to it in a proper case, as to which we express no opinion.

Judge Story, in speaking of that part of the bill which

contains the prayer for relief, says: "The usual course is for the plaintiff in this part of his bill to make a special prayer for the particular relief to which he thinks himself entitled, and then to conclude with a prayer of general relief at the discretion of the court. The latter can never be properly and safely omitted; because if the plaintiff shall mistake the relief, to which he is entitled, in his special prayer, the court may yet afford him the relief to which he has a right under the prayer of general relief, *provided* it is such relief *as is agreeable to the case made by the bill.*" Story's Eq. Plead. § 40. Again, "But, even when a prayer of general relief is sufficient, the special relief prayed at the bar must essentially depend upon the proper frame and structure of the bill; for the court will grant such relief *only as the case stated will justify;* and will not ordinarily be so indulgent as to permit a bill framed for one purpose to answer another, especially if the defendant may be surprised or prejudiced thereby." And the illustration he gives is just the converse of the case in hand. "Thus," says he, "if a bill is brought for an annuity, or rent charge of ten pounds *per annum,* left under a will, and the counsel for the plaintiff pray at the bar, that they may drop the demand of the annuity or rent charge, and insist upon the land itself, out of which the annuity or rent charge issues, the court will not grant it, *for it is not agreeable to the case made by the bill.*" Id. § 42.

And the relief which may be supplied under the general prayer must not only be consistent with the case made by the bill, but also with the relief specially prayed. 1 Dan. Ch. Prac. (4 Amer. Edv.), 378, 379, and notes. Under the general prayer the plaintiff is entitled to any relief which *the material facts and circumstances put in issue by the bill* will sustain; but it must be consistent with the case made, and if inconsistent with it, and with the specific relief prayed, will always be refused. Parker, J., in *James* v. *Bird's Adm'r,* 8 Leigh, 510, 513.

In *Hiern* v. *Mill*, 13 Ves. R. 114, (cited in 1 Dan. Ch. Prac. 380), Lord Eldon said, " The rule is, that if the bill contains charges, putting facts in issue that are material, the plaintiff is entitled to the relief *which those facts will sustain,* under the general prayer; but he cannot desert the specific relief prayed, and under the general prayer ask specific relief of another description, *unless the facts and circumstances charged by the bill* will, consistently with the rules of the court, maintain that relief."

The test of the relief to be granted is not the *case proved,* but *the case stated in the bill upon which the issue is made up.*

The only remaining question is, what disposition shall be made of the case? Shall we dismiss the bill without prejudice to a new bill to recover the money claimed, or remand the cause with liberty to the complainants to file an amended and supplemental bill for that purpose?

While great liberality has been manifested in modern times, especially by the courts of this country, in allowing amendments of pleadings (and with this increasing spirit of indulgence we find no fault), yet the courts everywhere agree in denying liberty to so amend and supplement a bill as to make an entirely new case. The question is discussed by Judge Staples in *Belton* v. *Apperson and others,* 26 Gratt. 207, where many of the authorities are cited and commented upon. It may be difficult under the adjudications, as Judge Staples intimates, to state with precision what is to be regarded as "a new case" within the meaning of the rule, but we think we may safely say that an amended and supplemental bill asserting a right to the money retained by the appellant could not be made to harmonize with the claim of the title to the land, which is the foundation of the present bill. The subject matter, the facts and circumstances on which relief would depend, the relief to be granted and the relief prayed, would be essentially differ-

ent in the two bills. They would have but little, if any-
thing, in common, except the identity of parties. We are
of opinion, therefore, that this is a case in which the com-
plainants must go out of court, without prejudice, however,
to their right to prosecute, if they shall be so advised, any
remedy at law or in equity to which they may be entitled,
for the assertion of any claim they may have to the money
in question; and such will be the decree of this court.

ANDERSON, J. I am not prepared to say that in no case
can relief be given under the general prayer for relief, if it
is not consistent with the prayer for specific relief, although
it is consistent with and warranted by the facts set out in
the bill. It is a question which I do not think is necessary
to be dicided, in order to reach the main conclusions of the
opinion which support the judgment of this court, in which
I concur.

The decree was as follows:

This day came again the parties by their counsel, and
the court, having maturely considered the transcript of
the record of the decree aforesaid and the arguments of
counsel, is of opinion, for reasons stated in writing and filed
with the record, that the said decree is erroneous; therefore
it is decreed and ordered that the said decree be reversed
and annulled, and that the appellees pay to the appellant
his costs by him expended in the prosecution of the appeal
aforesaid here; and this court, now proceeding to render
such decree as the circuit court ought to have rendered, it
is further decreed and ordered, that the bill of the com-
plainants be dismissed, and that they pay to the defendant
his costs by him expended in the defence of this suit in
the said circuit court; but this decree is without prejudice
to the right of the said complainants to prosecute, if they

shall be so advised, any remedy at law or equity to which they may be entitled, for the assertion of their claim to the money retained by the appellant as his late wife's share of the proceeds of the land purchased by him; which is ordered to be certified to the said circuit court of Pittsylvania county.

DECREE REVERSED.