## Richmond.

VA. FIRE & MARINE INS. CO. ET AL. V. COTTRELL.

March 4th, 1889.

1. EQUITABLE JURISDICTION AND RELIEF—*Judicial sales—Rescission.*—
   After confirmation judicial sale will not be set aside, except for fraud,
   surprise or other cause for which equity would relieve in case of sale
   by parties. *Berlin* v. *Melhorn,* 75 Va. 639.
2. IDEM—*Increase in value—Case at bar.*—Increase in value no ground for
   rescinding sale.
3. CHANCERY PRACTICE—*Fraud—Variance.*—Fraud must be distinctly
   charged; otherwise evidence of it is irrelevant and will be suppressed.
   *Southall* v. *Farish, ante* p. 403.
4. IDEM—*Petition.*—Proceedings to rescind a confirmed sale should be by
   petition setting forth grounds relied on.
5. CASES DISTINGUISHED.—*Bank* v. *Campbell,* 75 Va. 435, compared with
   . and distinguished from case at bar.

Appeal from decree of circuit court of Henrico county, ren-
dered 21st December, 1887, in a suit wherein the Virginia Fire
and Marine Insurance Company and another were plaintiffs, and
John W. Cottrell was defendant.   The suit, which was removed
to that court from the circuit court of Goochland county, was
brought for a partition of a certain tract of land, situate in the
last-mentioned county, known as "Sycamore Grove," and of
which the plaintiffs and the defendant were seized as tenants in
common.   The tract contained three hundred and eighty-eight
acres, and adjoined another tract of land known as "Carbon
Hill," which was owned by the appellee, the Richmond Coal-
Mining and Manufacturing Company, being separated there-
from by Tuckahoe creek.

It appearing in the progress of the cause that partition of the land was impracticable, a decree was entered for its sale, and John H. Guy and A. K. Leake were appointed commissioners to make the sale. The commissioners in their printed advertisements of sale described the land as "situate in the coal basin of Virginia, and said to be rich in minerals." And as an additional inducement to bidders, the land was further described as adjoining "*the Carbon Hill coal mines, which are now in operation.*"

The sale was made on the 31st of May, 1887, at public auction, all the parties in interest being present. The commissioners reported to the court that the land had been knocked down to the Richmond Coal-Mining and Manufacturing Company at the price of $2,650. The report then proceeds as follows: "Although the purchaser has not yet complied with the terms, its counsel state that they will be fully complied with, and, as the term of the court is drawing to a close and *the sale is an excellent one,* in the opinion of your commissioners, they advise that the sale be confirmed, and that your commissioners be authorized to carry out its terms." Those terms required one third of the purchase-money to be paid in cash, and for the balance a credit to be given of six and twelve months, the purchaser to execute negotiable notes for the deferred payments, and, as further security, the title to the land to be retained until the purchase-money should be fully paid.

This report, to which there was no exception, was filed, and by consent was acted on, at a special term of the court, on the 23d of July, 1887, when it was absolutely confirmed. The language of the decree of confirmation was that "the court doth confirm the said report and the sale therein mentioned to the Richmond Coal-Mining and Manufacturing Company, and said commissioners are directed to carry out the sale by collecting from the purchaser the cash instalment of the purchase-money, and taking its notes for the deferred payments." And then the decree went on to provide that "should the purchaser fail to

comply with the terms within twenty days from the date of this decree, then the clerk of this court shall, upon the application of said commissioners, issue a rule against the purchaser, returnable to the first day of the next term of the court, requiring it to appear and show cause why the land should not be re-sold at its risk."

The terms of sale not having been complied with within the prescribed time, a rule was issued accordingly, but no further action was taken upon it. It was admitted, however, in this court that on the return day of the rule the counsel of the purchaser appeared in court and announced his readiness to answer, although no offer to comply with the terms of sale was then made.

On the 29th of November, 1887, the purchaser, through its agents, tendered in cash to the commissioners the cash payment, with accrued interest, and also the amount of the first deferred payment, together with its note for the second and last deferred payment; but the tender was not accepted.

On the following day the court—not having been informed of the tender that had been made—issued another rule against the purchaser, returnable on the 5th day of December, 1887, requiring it to appear and show cause why the sale should not be *rescinded.*

To this rule the company (the purchaser) filed its answer, averring its readiness to fully comply with the terms of sale, and making to the court the same tender that had been previously made to the commissioners. It was also averred in the answer that the respondent, by its counsel, appeared on the first day of the term to comply with the terms of sale, but that, in the absence of the plaintiffs, nothing was done; and that it would have complied with the terms at any time after the confirmation of the sale if it had been called on to do so.

The plaintiffs filed a written application, in the nature of a petition, praying that the land be again exposed to sale at public auction. The ground of the application was, that since

the confirmation of the sale there had been discovered on the Carbon Hill property a valuable vein of coke which, it was believed, extended to the Sycamore Grove tract, only a few hundred yards distant, and that it was the belief of the plaintiffs that this discovery led to the application of the purchaser to be allowed to complete its purchase after its long standing delinquency. And they offered to furnish such security as the court might require that at another sale, if another should be ordered by the court, they would make a bid equal to the amount of the first sale, with interest and costs added.

Sundry affidavits were also filed, to the effect that the discovery of the above-mentioned vein of coke had greatly enhanced the value of the property. But the purchaser was allowed to complete its purchase, whereupon this appeal was taken.

*W. W. & Bev. T. Crump,* for appellant.

*Guy & Gilliam,* for appellees.

LEWIS, P. (after stating the case), delivered the opinion of the court.

One of the modes by which a purchaser at a judicial sale may be compelled to complete his purchase is by a rule to show cause why the property should not be re-sold at his risk; and in such a case, when a re-sale is ordered, the former sale is not set aside, but the property is sold as the property of the purchaser. If it brings more than the debt, he is entitled to the surplus; if it brings less, he is held responsible for the deficiency. *Clarkson* v. *Read,* 15 Gratt. 288. But a proceeding *to rescind* a sale which has been absolutely confirmed, ought to be not less formal than by a petition filed in the cause, setting forth distinctly the grounds upon which the application is based, in order that the purchaser or other adverse parties to the proceeding may see clearly what they have to meet. A summary rule to show cause is not sufficient.

In the present case, however, according to the liberal practice which prevails with us in courts of equity, the written application, as it is termed in the record, which was filed by the plaintiffs in the court below, praying that the property be again offered for sale, may be treated as a petition, and we will therefore consider the case upon its merits.

And, first, it is to be observed that the principles which apply to a case like the present are very different from those which govern in applications to open the bidding before confirmation. Until the sale has been confirmed the proceeding is *in fieri;* the bidder is not considered as a purchaser, and he is therefore not liable for loss to the property, by fine or otherwise, in the *interim,* nor is he compellable before confirmation to complete his purchase. But as soon as the sale is absolutely confirmed, then the contract becomes complete; the bidder, by the acceptance of his bid, becomes a purchaser; that is to say, the owner of the equitable title in the lien on the property for the unpaid purchase-money, and he may be compelled by the process of the court to comply with his contract. 2 Daniel Ch. Pr. (5th ed.) 1275; *Hurt* v. *Jones,* 75 Va. 341; *Blossom* v. *Railroad Company,* 3 Wall. 196.

It is by no means, therefore, a matter of discretion with the court to rescind a sale which it has once confirmed, nor is the sale to be rescinded for mere inadequacy of price, or for an increase of price alone; but some special ground must be laid, such as fraud, accident, mistake, or misconduct on the part of the purchaser or other person connected with the sale, which has worked injustice to the party complaining. After confirmation the purchaser at a judicial sale is as much entitled to the benefit of his purchase as a purchaser *in pais,* and the sale in the one case can be set aside only on such grounds as would be sufficient in the other. There is no principle upon which any distinction between the two classes of cases can be drawn, and if there be anything in the opinion of the court in *Merchants Bank* v. *Campbell,* 75 Va. 455, which can be construed as hold-

ing a contrary doctrine, the proposition has been overruled by subsequent decisions.

In *Watson* v. *Birch*, 2 Ves., Jr. 51, Lord Commissioner Ashurst observed that biddings are not to be opened after confirmation of the report unless under particular circumstances; that increase of price alone is not sufficient, but that if fraud appears that suspends the operation of the general rule, though he did not mean to say that fraud was the only exception.

In *Morice* v. *Bishop of Durham,* 11 Ves. 57, Lord Eldon is reported as saying that the only case in which the biddings can be opened after confirmation of the report is where there is some fraud or misconduct of the purchaser, or fraudulent negligence in another person as the agent, of which it is against conscience that the purchaser should take advantage. And in *White* v. *Wilson*, 14 Ves. 151, he said that surprise generated by the conduct of the purchaser is good ground for setting aside a sale after it has been confirmed, but where there is no fraud or unfairness the purchaser is entitled to the benefit of his purchase, and that, in his opinion, a more mischievous thing could not be done to suitors than to relax farther the binding nature of contracts in the master's office.

We need not, however, look beyond the decisions of this court for authority upon this subject. In *Berlin* v. *Melhorn*, 75 Va. 639, a sale which had been confirmed was summarily set aside at the same term, upon the offer of an advance bid, without any reason for so doing being assigned. This court, upon appeal, reversed the decree, and the ground upon which it proceeded was thus stated by Judge Burks: "We think," he said, "it may be safely laid down as a general rule, deducible from the authorities, that after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside except for fraud, mistake, surprise, or other cause for which equity would give like relief if the sale had been made by the parties in interest instead of by the court. But where the objection," he added, "is to the confirmation, the rule is more liberal."

This rule, which is an eminently just and salutary one, has been repeatedly recognized by this court, and public policy, which looks to the stability of judicial sales, requires that it be adhered to. *Langyher* v. *Patterson & Bash,* 77 Va. 470; *Coles* v. *Coles,* 83 Id. 525; *Todd* v. *Gallego Mills,* 84 Id. 586.

In the light of these principles, it is very clear that the decree complained of must be affirmed. The sale, which was sought to be set aside, was not confirmed conditionally, as the appellant contends it was, but absolutely. The unequivocal terms of the decree leave no room for doubt upon this point. And, unless there was *mala fides* on the part of the purchaser, the fact that the terms of sale had not been complied with when the report was confirmed, does not affect the case. The equitable title passes to the purchaser at a judicial sale, not by virtue of his compliance with the terms of sale, but by the confirmation of the sale by the court; and while it is usual and proper to require compliance with the terms of sale before the report is acted upon, yet if this is not required, and the sale is confirmed, the rights of the purchaser are the same as if the terms had been complied with, provided his conduct has been fair and not to the prejudice of any other party. And so, reciprocally, he may be compelled to complete his purchase as fully in the one case as in the other.

It is contended, however, that the purchaser in the present case has not dealt fairly with the court; that its bid was made with the sinister purpose of making compliance with its contract contingent upon the result of certain experiments to be made on its own land adjoining the property in question, and therefore that the sale ought to be rescinded. But this position is not supported by the record. Those operations were commenced and publicly conducted before the sale was made. Indeed, the fact was published to the world, in the printed advertisements of sale, as one of the inducements to the purchase of the land, and it is not unreasonable to suppose that it favorably affected the sale to the advantage of the appellant. At all events, the sale

was reported as an excellent one and promptly confirmed, without any exception having been taken to the report.

Moreover, fraud or misconduct, when relied on as a ground for rescinding a contract, must not only be clearly proved, but it must be *distinctly charged* in the pleadings. And if not so charged, evidence to prove it is irrelevant, and ought to be suppressed as improperly taken, no matter how strong a case it may show. *Thompson* v. *Jackson,* 3 Rand. 504; *Southall* v. *Farish, ante,* p. 403, and cases cited.

The application of this rule is decisive here. The petition, as we will call it, which was filed by the plaintiffs in the court below, merely alleges the fact of the discovery of a valuable vein of coke by the purchaser on its own land since the confirmation of the sale, and that the plaintiffs believed that, in consequence of that discovery, an application would be made by the purchaser to the court to be allowed to complete its purchase. But this, at most, is only a vague and inferential charge, which falls far short of the requirements of the rule above mentioned; and, besides, we have been unable to discover any evidence in the record upon which fraud or bad faith can be imputed to the purchaser. Fraud, even when distinctly charged, must be clearly proved. *Hickman's Ex'or* v. *Trout,* 83 Va. 478. "If the fraud is not strictly and clearly proved as it is alleged, although the party against whom relief is sought may not have been perfectly clear in his dealings, no relief can be had." *Hord's Adm'r* v. *Colbert,* 28 Gratt. 49; *Mathews* v. *Crockett,* 82 Va. 394; *Houghton* v. *Graybill,* Id. 573.

Nor does it appear that the purchaser was not able to perform its contract when the sale was confirmed, and, as no personal security was required by the terms of sale, no injustice is shown to have been done by the confirmation of the sale before the terms were complied with; for, had they been previously complied with, the security would have been substantially the same as it is. It is evident the sale was considered, at the time, a good one by the parties in interest, and that they were not only

willing, but anxious it should be confirmed, although the report expressly stated that the terms had not been complied with, but that the counsel for the purchaser had assured the commissioners they would be. The value of the property, however, has since increased, and the sale is now sought to be rescinded. But we are constrained to say that we perceive no more reason, under the circumstances of the case, for rescinding the sale than there would be to discharge the purchaser from its contract if the result of the experiments above mentioned had been the opposite of what they were.

The appellant lays much stress on the delay of the purchaser in complying with the terms of sale after confirmation of the report; but that is fairly explained, we think, by the record. On the return-day of the rule to show cause why the land should not be resold, the purchaser, by counsel, appeared in court and announced its readiness to answer, but no action upon the rule was taken. Why the matter was dropped does not appear, but the inference is that the delinquency of the purchaser up to that time was condoned. And before the second rule was gotten out, the whole of the first deferred payment was tendered to the commissioners (the day before it fell due), together with the cash payment and accrued interest thereon, and also the purchaser's note for the second and last deferred payment. The tender, however, was not accepted, and, without knowledge of the fact that it had been made, the court ordered the rule to be issued.

To this rule the purchaser filed its answer, renewing the tender it had made to the commissioners, and averring that it would have complied with its contract at any time after the sale if it had been required to do so. The court thereupon accepted the tender and discharged the rule, and in this there was no error. In the absence of fraud or misconduct, the payment of interest on the cash payment was an equivalent for the default of the purchaser, and hence no one has been injured. *Smith's Ex'or* v. *Profitt*, 82 Va. 832, 849. Ordinarily, in such cases,

time is not of the essence of the contract, and to justify the rescission of an executed contract, or a sale which has been confirmed, there must be some objection which goes to the substance of the contract. *Thompson* v. *Jackson, supra.*

It is hardly necessary to add, after what has been said, that, in our opinion, there is no analogy between the present case and *Merchants Bank* v. *Campbell,* 75 Va. 455, relied on by the appellant. In that case the purchasers, before confirmation of the sale, discovered underneath the land for which they had bid a cave of vast proportions and beauty, which enormously added to the value of the property. And after making the discovery, they carefully stopped up the entrance to the cave, and falsely reported that it was nothing but *a mud-hole.* This was a palpable fraud, as the court held, and upon that ground the sale was rescinded. We do not see how any other conclusion could have been reached; nor do we understand the court as intending to go further than to announce the doctrine as well established, both in England and America, that for fraud, misrepresentation, or injurious mistake, a sale whether confirmed or not, will be set aside, and the property again sent into the market and re-sold—a proposition in harmony with what has already been said. See also *Talley* v. *Starke,* 6 Gratt. 339 ; *Watson* v. *Hoy,* 28 Id. 698.

DECREE AFFIRMED.