Moncure, J.
The first question presenting itself for consideration in this case is, Whether Saunders’ executor is entitled to any relief at all against Little-ton Tazewell’s estate? That a claim for which the cause of action accrued in 1796, against a debtor who died in 1815, leaving apparently an ample estate for the payment of his debts, has not yet been prosecuted to a recovery, would seem to impute great laches to those whose interest or duty it was to prosecute the claim. But laches in the assertion or prosecution of a claim is not always enough to defeat it. The laches must be such as to afford a resonable presumption of the satisfaction or abandonment of the claim ; or such as to prevent a proper defense by reason of the death of parties, loss of evidence, or otherwise. In this case it cannot be said that the claim has been satisfied or abandoned. The debtor died within twenty years after the cause of action accrued, and before any presumption of payment had arisen from lapse of time. The debt was due by specialty, to which no act of limitations then applied. The debtor by his will ere *363 ated a trust of his real estate for the payment of his debts, which as to the trust subject, would keep alive a debt against which no presumption of payment act of limitations had then run. In less than two years after his death, to wit, in September 1817, a judgment at law was recovered against his executrix for the debt. Very soon thereafter, to wit, in April 1818, the judgment was enjoined. The executrix having died thereafter,' (but at what time does, not appear,) the judgment was in 1832 revived against the surviving executor, by his counsel, though it seems in pursuance of an order made in the injunction suit. In August 1836 the injunction was dissolved. Robert Saunders, one of the original obligees in the bond and sole plaintiff in the revived judgment, having died, it appears to have been again revived in the name of his executor. In January 1837 an execution was sued out on the last revived judgment, and returned “No effects found.” Iu October 1842 this suit was brought in equity for a discovery and account of assets and satisfaction out of the same. There has been no unnecessary delay in the prosecution of the suit. The only delay since the death of the debtor which can justly be imputed to the creditor, or tend to raise a presumption against the claim, is that of five or six years between the return of the execution and the institution of this suit. That delay, though not well accounted for, is wholly insufficient to repel the force of the other circumstances; which conclusively show that the claim has been neither satisfied nor abandoned, but that it was promptly asserted after the debtor’s death, and has at different times since been thrice recognized and established by a court of law, and once by a court of equity. Nor can it be said that the debtor or his personal representatives have been prevented from making a proper defense by any laches of the creditor or his representative. The only difficulty which exists on *364 that subject has resulted from the neglect of duty of the debtor’s representatives. That difficulty is, not in ascertaining what is due on account of the debt, or whether there were assets enough for its payment, but in ascertaining what part of these assets came to the hands of the representatives respectively, and what disposition has been made of them. It was their duty to have returned a full inventory of the estate, to have settled just and regular accounts, and thus to have furnished record evidence of the amount of assets, and the disposition made of them. They were early warned of the existence of this claim, and it was their duty to have provided for its payment. These plain duties they neglected, and the consequence of their neglect must not fall on the creditor; who, I therefore think, is entitled to relief against his debtor’s estate.
The next question is, What is the measure of that relief? Does it extend to the whole principal and interest claimed, or is it limited by the amount of the penalty of the bond ?
In Lord Lonsdale v. Church, 2 T. R. 388, Buller, J. after reviewing the authorities, expressed a decided opinion that in an action on a bond, damages may be recovered for the excess of principal and interest over the penalty of the bond; though the case went off without an adjudication of the question. Afterwards, however, in Knight v. Maclean, 3 Bro. C. C. 496, which came on to be argued before the same judge sitting for the lord chancellor, he sustained an exception to a master’s report not allowing interest beyond the penalty of a bond. “ There may be cases (he said) that say the interest shall only be to the amount of the penalty; but they are very old cases, and were determined in conformity to the rule of law. But it is now held otherwise even there.” “ Then, if it be so at law, where is the equity to prevent it being so here? Will a court of equity narrow the remedy of creditors whom *365 in general it favors more than a court at law does?” This decision of Judge Buller, notwithstanding the strong reasons with which it was enforced, was versed on reargument before the lord chancellor, Thur-low; who, about the same time, decided Tew v. Winterton, Id. 489, in the same way. And in Wild v. Clarkeson, 6 T. R. 303, Lord Lonsdale v. Church, supra, was denied by the Court of king’s bench. Without reviewing all the cases, (which are numerous,) it must be admitted to be now settled in England, as a general rule, that no more than the penalty of a bond can be recovered, either at law or in equity. See 1 Saund. Bep. 58, (b,) and the cases cited in the' notes, and also in the note to Hellen v. Ardley, 14 Eng. C. L. R. 186. But many exceptions have been established to the rule. As in McClure v. Durkin, 1 East’s R. 436, in which it was held that in an action on a judgment it was competent to the jury to allow interest to the amount of what was due, although it exceeded the penalty of the bond on which the action was brought. So if the party be by injunction prevented from recovering his debt at law while the demand was under the penalty. Show. P. C. 15, 6 Ves. R. 79. So interest will be given beyond the penalty of a bond upon a mortgage for the same debt, though by a surety. Clarke v. Ld. Abingdon, 17 Ves. B. 106 ; or upon a promissory note bearing interest and given for the same debt. So if an obligor goes into a court of equity for relief as plaintiff, although he submits to nothing, yet by the mere circumstance of filing the bill, he would be taken to submit to every thing conscience and justice require. Pultaney v. Warren, 6 Ves. R. 73, 92. See the note to Hellen v. Ardley, supra.
This case might perhaps, if it were necessary, be brought within one or more of the foregoing exceptions. It might be contended that it comes within the exception established by McClure v. Hunkin, of a *366 suit upon a judgment; or that established by Show. P. C. 15, and 6 Ves. R. 79, of a party prevented by from recovering his debt at law while the demand was under the penalty. It was argued that ^njunc^on was properly awarded; and though dissolved, yet it was without damages, and with costs to the plaintiff in the injunction; and therefore that the creditor, and not the debtor, is responsible for the consequences of the injunction. A copy of the decree of dissolution is the only part of the record in the injunction case that is before us; from which it appears that there were two causes of litigation in the case, one of which was decided in favor of the plaintiffs, and the other in favor of the defendants; but it does not appear which was the principal cause.
But I do not think it necessary to maintain that this case comes within any exception to the general rule, as now settled in England. I think no such general rule exists here ; and that the decided preponderance of the American cases, so far as I have seen, is against its existence, and in favor of the doctrine as laid down by Buller. Many of those cases are cited in Perkins’ note to Tew v. Winterton, 3 Bro. C. C. 489. In one of them, Mower v. Kip, 6 Paige’s R. 88, the chancellor, after laying down the limitation under which a surety may be liable beyond the penalty, says, “ Such a limitation of liability, however, is not applicable to the principal debtor in a money bond. As to him, the amount secured by the condition of the bond is the real debt which he is, both legally and equitably, bound to pay; and if he neglects to pay the money when it becomes due, there is no rule of justice or of common sense which should excuse him from the payment of the whole amount of the principal and interest, whether it be more or less than the formal penalty of the bond.” “ The general current of the American cases (he says) is in favor of allowing *367 interest by way of damages beyond the penalty; and in many cases this principle has been extended to the case of a surety.” In this state, Tennants v. Gray, 5 Munf. 494, is admitted to be an express authority in favor of the right at law to recover interest beyond the penalty in the shape of damages. That was unanimous decision of the court, and it is believed has ever since been regarded as having settled the law of this state ; which is an answer to the objection that it stands as a solitary case. If solitary, it is because it has never been questioned. But it has been incidentally recognized by this court in several cases; and never has, I believe, been questioned in any case. In Roane's adm'r v. Drummond's adm'r, 6 Rand. 182, the principle was applied to a judgment for a penal sum. In Baker v. Morris' adm'r, 10 Leigh 284, (in which there was very great delay in the assertion of the claim,) full interest was given by a court of equity, though, with the principal, it exceeded the penalty of the bond. It was said, in the argument of this case, that that was a decision of two judges in a court of three, and therefore not a binding authority. The third judge, as was properly answered in the argument, expressed no opinion on this question, but dissented on another ground. And Judge Parker, who was then on this bench, had decided the case in the court below. It therefore comes up as nearly as possible to a binding authority. But admitting the doctrine at law to be settled by Tennant's ex'or v. Gray, as I think it certainly is, the same doctrine in equity results as a necessary consequence. The doctrine at law and in equity has, I think, run on all fours in England. Or perhaps it would be more proper to say that the doctrine in equity was built upon the doctrine at law. The difficulty arose at law, where the. penalty was considered the debt. There would otherwise have been no difficulty in equity, which generally regards *368 substance and not form. But in this instance it at length determined to follow the law, and consider the as the ultimatum of the debt. Knight v. Maclean, supra; Mackworth v. Thomas, 5 Ves. R. 329; Clarke v. Seton, 6 Id. 411. It is like the case of a on which, in England, interest is not generally recoverable, either in an action at law or suit in equity; but may be recovered in the former under certain circumstances in the shape of damages, and will be given in the latter under the same circumstances. Equity in this respect follows the law. Gaunt v. Taylor, 9 Cond. Eng. Ch. R. 47.
In this state, interest is generally recoverable on a judgment, both at law and in equity. Beall v. Silver, 2 Rand. 401; Roane’s adm’r v. Drummond’s adm’rs, 6 Id. 182; Clarke’s adm’r v. Day, 2 Leigh 172; Mercer’s adm’r v. Beale, 4 Id. 189; Laidley v. Menifield, 7 Id. 346. But if the judgment does not carry interest on its face, it can only be recovered by action or suit upon the judgment. It is not a part of the judgment, and of course cannot be recovered by execution thereon, nor does the lien of the judgment extend to it. Mercer’s adm’r v. Beale, supra; Michaux’s adm’r v. Brown, 10 Gratt. 612; Mower v. Kip, 6 Paige’s R. 88. I think, therefore, the true doctrine with us is, that full interest on a bond, or judgment for a penalty, is generally recoverable at law or in equity, though the principal and interest exceed the penalty. The only difference between the two forums being, that according to the strict rules of law the penalty must still be regarded in form as the debt, and the excess of interest can only be recovered indirectly in the shape of damages; while equity takes no notice of the penalty, but gives a direct decree for the principal and running interest, as in other cases. Eull interest should always be given, though there be a penalty, and the principal and interest exceed it, wherever full interest would be *369 given if there were no penalty. In other words, the penalty should have no effect on the question of interest, except in regard to the form of recovering excess in an action at law upon the bond. What have said on this subject has reference only to the case „ . . , , , J T ... , of a principal debtor. I express no opinion m regard to the liability of a surety beyond the penalty, it being unnecessary to do so. I think this doctrine is more reasonable than the English, and more consistent with our course of business, the uniform tendency of our adjudications, and the spirit of our legislation. . The penalty of the bond, in its origin, was intended for the benefit of the obligee, and became the debt due to him when the condition was broken. It never was intended for the benefit of the obligor and to limit his liability in case of his long continued default. Courts of equity, at an early period, interposed for his relief, by compelling the obligee to receive the principal and interest in discharge of the penalty. And courts of law have long since been authorized by statute to give the same equitable relief. The penal part of the obligation has thus lost its function, and become an unmeaning form. Why should an effect be now given to it, which was never intended by the contracting parties ; and which converts what was designed as a penalty on the obligor for his default into a penalty on the obligee for his indulgence ? In England even, ascertained debts bear interest only in particular cases. Here they bear interest generally. According to our notion, it is “ natural justice that he who has the use of another’s money should pay interest.” Pendleton, P. in Jones’ ex’or v. Williams, 2 Call 106. In England, as we have seen, interest will not generally be given on judgments; while in this state it will. A debtor who is restrained by attachment from paying the debt will generally be compelled, in this state, to pay interest on the money while in his hands, “ because the *370 owner of the debt has a right to the interest; because money is worth its interest, and if the holder does not so, he has always the privilege of bringing the money into court.” 2 Rob. Pr. 206, and cases cited. Other cases might be cited to show the general inclination of our courts in favor of the allowance of interest. As to the spirit of our legislation on the subject. At an early period running interest was made recoverable, first, in actions at law upon contracts, 1 Rev. Code ISIS, p. 508, § 80; and then in suits in equity. Id. 208, § 58. It was a general- rule formerly that interest was not recoverable on rent in arrear; but it has since been directed to be allowed by statute. Acts 1826-7, p. 26, ch. 27, § 3. By the Code, p. 673, § 14, the jury is authorized to allow interest even in an action founded in tort. And it is provided, that “ if a verdict be rendered hereafter which does not allow interest, the sum thereby found shall bear interest from its date,” and judgment shall be entered accordingly. I am therefore of opinion that the relief to which the creditor is entitled in this case is not limited by the penalty of the bond, but extends to the whole principal and interest of the judgment, subject only to the proper credits.
The remaining question is, Against whom ought the decree to be rendered? The debtor charged his whole estate for the payment of his debts; and it was ample for that purpose. The great controversy in the •case has been as to what has become of the estate, and what portions thereof are properly chargeable to the personal representatives respectively. On the one hand, it was contended that W. Tazewell was the sole acting executor, and is chargeable with all the estate •not affirmatively appearing to have come to the hands of Mrs. Tazewell the executrix. On the other, it was contended that she, during her life, was the sole acting representative; that W. Tazewell qualified only to *371 unite in the sale and conveyance of the real estate, which he was advised required the co-operation of both executors; that he only acted during her life as her agent, and that, not in her character of executrix only, but chiefly in her character of devisee and legatee entitled with her daughter to the possession use of the whole estate, and that he is chargeable only with such portion of the estate as appeared to have come to his hands as executor. The difficulty of determining this controversy is apparent from the fact that three several reports were made by the commissioner under three several decrees of the court; the commissioner on each occasion being satisfied, and making his report on the basis, that W. Tazewell was the sole acting executor, while the court, not being satisfied on the subject, twice recommitted the report with the exceptions to the commissioner to be reexamined and restated by him. And at last the court, not being able to settle the whole controversy to its satisfaction, but being of opinion that assets properly applicable to the claims of the plaintiffs in this case and that of Whittle’s administrator, which came on for hearing with it, and sufficient to discharge both of the said claims, did come to the hands of W. Tazewell as executor, decreed that the appellant, executor of W. Tazewell, out of the assets of his testator in his hands to be administered, should pay both of the said claims and the costs of the claimants respectively. The court did not pass upon the report and exceptions further than was necessary to make the said decree. If it were necessary for this court to decide all the questions raised by those exceptions, it would be difficult if not impossible to do so. But I think it is not. If there were any doubt as to the sufficiency of the assets which came to the hands of W. Tazewell to satisfy both of the aforesaid claims, there can he none as to their sufficiency to satisfy the claim of Saunders’ *372 executor, which alone will remain to be paid if the WU °f Whittle’s administrator be (according to my opinion in that case) dismissed. Without saying any thing of the personalty, the proceeds of the real estate alone, sold by W. Tazewell as executor, on or before the 1st of January 1832, are much more than sufficient to satisfy that claim; and that too, after deducting one hundred and eighty-nine dollars and twenty cents with interest on one hundred and fifty-five dollars and twelve cents from December 31, 1831, appearing to be due to said executor on his own account settled before commissioner Green in the case of Whittle’s administrator. That certainly is the most favorable view which can be taken of the case for the said executor. He cannot therefore be prejudiced by the decree, and cannot complain of it. He cannot complain that the court did not decide questions of difficulty raised by his own default, when it certainly appears that there is in his hands a fund properly applicable to the payment of the decree, and sufficient for the purpose. Full power was given him by the will to sell the whole or any part of the testator’s estate, real or personal, for the payment of his debts. The real estate was sold by him for that purpose in 1831 or 1832, and he or his representative yet holds the proceeds, or is liable for them. It may be said that other creditors are entitled to participate with the claimant in this case in the application of these proceeds, which are equitable assets. No other creditors have claimed since the testator’s death in 1815, more than forty years ago; and it is now too late for them to come in, if there be any. It may be said that the personal estate is first applicable, and should be accounted for and applied, before the proceeds of the real estate are applied to the payment of debts. The decree is not in rent against the proceeds of the real estate, but against the executor personally, who is, *373 beyond all question, liable to a personal decree in respect to the real if not the personal estate; and it matters not which, in this case. It cannot devolve the creditor to continue an already long protracted and expensive litigation, merely for the purpose of ascertaining the order in which a fund is liable to the payment of his claim, to which the whole fund is certainly liable. It is enough that his decree will leave that question open and untouched; to be raised and litigated by any person who may have a right, or choose to do so. I think, therefore, the Circuit court did not err in rendering a decree in favor of Saunders’ ex’or against W. Tazewell’s ex’or. But there is a small error in the amount of the decree. The claim was subject to a credit for fifty-three dollars and forty-eight cents, the costs recovered by L. Tazewell’s representatives in the injunction suit. Commissioner Poitiaux, in his statement of the claim, added instead of subtracting the amount of this credit. Afterwards, Commissioner Davis, in making a special statement of the claim on which the decree was founded, .deducted the same amount from the balance reported due by Commissioner Poitiaux; thus leaving the matter where it stood at first, without any credit for these costs. The error must now be corrected, by deducting fifty-three dollars and forty-eight cents from the amount of the decree; which can be amended in this respect, under the provisions of chap. 181 of the Code, p. 680.
Besides a decree against W. Tazewell’s executor, Saunders’ executor was entitled to a decree against C. Tazewell’s administrator, payable out of her assets in his hands. He probably did not take such a decree, because he was satisfied there were no such assets, which appears to be the fact, from the answer of the said administrator. At all events, Saunders’ executor does not complain of the decree of the Circuit court in this respect; and as it is interlocutory, he may still *374 apply to that court for a further decree against the said administrator. It is therefore unnecessary for this to render such a decree.
Before concluding my opinion, it may be proper to no^ce an objection taken in the argument, that no account had been given of the sale of the tract of land called “ Secretaries,” decreed to be sold for the satisfaction of the claim of Saunders’ executor, by the decree -which dissolved the injunction. That objection was raised for the first time in this court; which would probably be a sufficient answer to it. But a better answer is, that the' decree unconditionally dissolved the injunction, and left the creditor free to enforce his judgment at law. The decree for the sale of “ Secretaries” was collateral; and if any thing ever arose from it which could benefit the representatives of L. Tazewell, it was for them to show it.
I am therefore of opinion that the decree ought .to be amended as aforesaid; and as amended, ought (so far as it applies to this case) to be affirmed with costs.
The other judges concurred in the opinion of Moncure, J.
Decree amended and affirmeS.