## Staunton.

### CREBS V. JONES.

September 25, 1884.

1. CONTRACTS—*Consideration—Mental Weakness—Undue Influence—Rescission.*—Mere inadequacy of consideration is no ground for rescinding contracts. But great weakness of mind, coupled with gross inadequacy of consideration, will induce courts of equity to rescind contracts, where from these facts, undue influence is inferable.
2. FRAUD—*Onus probandi.*—Fraud is never presumed, but he that alleges it, must prove it strictly and clearly as alleged.
3. CHANCERY PRACTICE—*Issues out of Chancery.*—The object of trying by juries such issues, is to satisfy the chancellor's conscience where the evidence is contradictory; but the court is not bound to direct an issue merely because the evidence is contradictory. The expense and delay of such trials are to be incurred only where the court, exercising sound discretion, thinks it necessary, except in certain cases where they are matters of right.

Appeal from decree of circuit court of Frederick county, dismissing a. bill, brought by appellant, to rescind conveyance made by him to appellee, of house and lot in Winchester, which he alleged had been procured from him by the fraud and false representations of the appellee ard his confederates. Opinion states the case.

*A. R. Pendleton, W. R. Alexander*, for the appellant.

*Richard Parker*, for the appellee.

LEWIS, P., delivered the opinion of the court:

This is an appeal from the decree of the circuit court of Frederick county. The record in the case is voluminous, but the questions to be determined are few and simple. The appellant, who was the plaintiff in the court below, filed his bill to set aside a certain conveyance made by him to the appellee of a house and lot in the town of Winchester, in exchange for certain real estate belonging to the latter in the city of Washington, which, he alleged, had been procured from him by fraud and misrepresentations on the part of the appellee and his confederates. The answer denies the charges of fraud and collusion, and details the circumstances attending the transactions between the parties. Much testimony was taken on both sides, and at the hearing the circuit court dismissed the bill.

The grounds upon which a reversal of this decree is urged are, first, mental weakness on the part of the appellant, accompanied by inadequacy of consideration for the conveyance, and fraud on the part of the appellee; and, secondly, the refusal of the circuit court to direct an issue to be tried by a jury.

It is well settled that mere inadequacy of consideration is of itself no ground for the rescission of a contract. But when great weakness of mind, though not amounting to absolute disqualification, concurs with gross inadequacy of consideration, a court of equity will, upon seasonable application, set aside the transaction when these facts are made to appear. For from these circumstances, imposition or undue influence will be inferred. *Allore* v. *Jewell*, 94 U. S. 506; 2 Minor's Inst. (3d ed.), marg. p. 596, *et seq.* But such is not this case. Here there is no allegation in the bill that the plaintiff was incompetent to contract, or was of weak mind. The most it alleges is that he was young and inexperienced, and of a confiding and credulous disposition; which may all be true, and yet it affords no evidence of incapacity for business or of mental weakness. But if we look

beyond the pleadings, we find the testimony vague and indefinite, and wholly insufficient to sustain the contention of counsel. Only three of the many witnesses examined testify as to the plaintiff's mental condition. Of these, the first, Charles F. Whittlesey, testifies that he has known him from his boyhood; but the most he can say is, that he was, in disposition, weak and vacillating, and "his intellectual capacity not of the highest." The second, R. F. Hockney, a former school-mate, testifies that at school he was considered very light, and was called by the boys, "crazy Crebs;" and that in business he is careless and inattentive. W. B. Evans, the third witness, testifies that after he (the plaintiff) removed to Washington, he employed him as a clerk in a drug store, and that while thus employed, he, on one occasion, took from the store certain articles of value, which he afterwards confessed to have stolen, and promised to make restitution, which he did, and that he (the witness) condoned the offense because he believed him to be devoid of understanding and ignorant of the impropriety of his conduct. But the force of this witness' testimony is greatly weakened, if not destroyed, by his apparent animosity towards one of the alleged confederates of the defendant, and by the fact disclosed in his own deposition, that he not only continued the plaintiff in his responsible position, after the discovery of the larceny, but afterwards sold him the entire contents of the store, and offered to lease him the building in which the business was conducted. Manifestly, his opinion that the plaintiff lacked understanding is an afterthought, and entitled to little consideration. Moreover, the plaintiff was himself examined as a witness, and his testimony is clear and pointed, betraying no signs of mental weakness. And here a significant fact to be noted is, that not one witness residing in Winchester, or its vicinity, where the plaintiff was reared, where his property was situated, and where he lived until a few months prior to the transaction in question, was called to testify on any point in the case; from which, it is

fair to infer that none could be there found by whom the fact of mental weakness on the part of the plaintiff could be established.

The inquiry then is, whether the conveyance sought to be set aside was obtained by fraud or misrepresentations, as alleged in the bill. And here it is hardly necessary to repeat what is so often said that fraud is never presumed. It must not only be alleged, but it must be strictly and clearly proved as alleged, otherwise relief will be denied, notwithstanding the party against whom relief is sought may not have been perfectly clear in his dealings. *Hord's Adm'r* v. *Colbert et als.*, 28 Gratt. 49. In the present case only two witnesses, besides the plaintiff and defendant, testify from personal knowledge as to the negotiations between the parties and the execution of the deeds. These are Henry Garrett and J. C. Hariland, and their testimony, which the plaintiff unsuccessfully sought to impeach, substantially supports the defence set up in the answer and in the defendant's own deposition. It appears that some months after his removal to Washington, the plaintiff expressed a desire to the witness, Garrett, to exchange for real estate in that city his property in Winchester, and requested him to find, if he could, a person willing to make such an exchange. The result was that Garrett soon afterwards introduced the plaintiff to Hariland, a real estate agent, by whom an interview with Jones, the defendant, was arranged to be had at Hariland's office. The parties there met in the presence of Garrett and Hariland, and discussed proposals for the exchange of properties. The defendant was the owner of two houses and lots on Tenth street, and one on Seventh street. Both were subject to encumbrances, the amount of which were stated to the plaintiff. Several interviews afterwards took place between the parties, and in the presence of the same persons.

Finally it was agreed, that in exchange for the plaintiff's house and lot in Winchester, supposed to be worth six thousand

dollars, and which was subject to an encumbrance of twelve hundred dollars, but which the plaintiff represented to be only eight hundred, the defendant would convey to him the two lots on Tenth street and the one on Seventh street, and, in addition, assign him a bond, secured by mortgage on real estate, for one thousand dollars. The deeds were accordingly executed and the bond assigned. In all of the interviews between the parties, the defendant represented the property on Tenth street to be worth $11,000, and that on Seventh street to be worth $2,000. During the pendency of the negotiations the parties visited the property and inspected it. It would seem that the plaintiff was already, to some extent, familiar with the Tenth-street property, as he had for some time lived in the immediate neighborhood. It is certain he had the fullest opportunity for ascertaining its probable value, and the testimony shows that he was referred to various persons for information on that subject. It further shows that the defendant, a few years before, paid for the property the sum at which he valued it, and that similar property adjoining it had been sold about the same time for nearly the same price. It further shows that one of the liens, represented by the defendant to be for one thousand dollars, turned out to be eight hundred only. It further shows that the transactions were deliberately consummated by the plaintiff after full opportunity for investigation, and it utterly fails to show that any imposition or undue influence was exercised upon him by the defendant or by any other person or persons. Indeed, it not only fails to sustain, but disproves the allegations of fraud and imposition, and shows no ground upon which properly to direct an issue. The object of an issue to be tried by a jury is to satisfy the conscience of the chancellor when the evidence is contradictory and it is difficult to decide upon it. But the court is not bound to direct an issue merely because the evidence is contradictory. The expense and delay which it involves are only to be incurred when the court,

in the exercise of a sound discretion, may think it necessary, except in certain particular cases in which, by statute or practice, it is made a matter of right. *Wise* v. *Lamb*, 9 Gratt. 294; *Smith's Adm'r* v. *Betty et als.*, 11 *Id.* 752 ; *Hord's Adm'r* v. *Colbert et als.*, 28 *Id.* 49. The decree is affirmed.

DECREE AFFIRMED.

HINTON, J., dissented.