## Staunton.

Matthews v. Crockett's Adm'r and als.

September 16th, 1886.

1. Inadequacy of Consideration—*Rescission.*—Mere inadequacy of price is no ground for rescission of executed contracts. Only for inadequacy so gross as to lead to the irresistible inference of fraud, will a sale that is made without imposition between parties standing on equal ground, be rescinded by a court of equity.
2. Fraud—*Burden of proof.*—Fraud is never presumed. The alleger thereof must prove it clearly as it is alleged.

Argued at Wytheville.    Decided at Staunton.

Appeal from decree of circuit court of Wythe county, in the cause of J. Stuart Crockett, as administrator *c. t. a.* of Elizabeth E. Crockett, deceased, and as committee of Henry E. Crockett, a lunatic, &c., is plaintiff, against C. E. Mayer and Maria B., his wife, William Gibboney, Alex. F. Matthews and others, defendants.

The case, so far as it is necessary to be stated in order to a correct understanding of the matter in controversy, is this: The said Elizabeth E. Crockett, under the terms of the will of her father, the late Henry Erskene, was entitled for her life to the interest on a certain coupon-mortgage-bond of the White Sulphur Springs Company. This bond is described in the record as "bond No. 2," and was for the sum of $21,848.66. In 1869, being indebted to one William Gibboney, of Wythe county, in the sum of $2,210.92, she delivered to the latter two

coupons cut from the said bond, each being for the sum of $1,310.92, and due October 15, 1861, and October 15, 1862, respectively, to be by him collected, and the proceeds, as far as necessary, to be applied to the payment of his debt, and the balance, if any, to be paid over to her. This arrangement was evidenced by a written contract, dated June 28th, 1869, and designated in the record as "the Gibboney contract."

In January, 1877, Elizabeth E. Crockett departed this life, leaving three children surviving her, who, under the will of Henry Erskene, thereupon became entitled to the said bond. These children were the appellees, J. Stuart Crockett, Henry E. Crockett, and Maria B., the wife of C. E. Mayer. The first, J. Stuart Crockett, qualified as the administrator with the will annexed of his mother, and afterwards as committee of his brother, Henry E. Crockett, who had become *non compos mentis*.

On the 13th of January, 1880, the said J. Stuart Crockett, as administrator and committee as aforesaid, assigned to the appellant, Alex. F. Matthews, of Lewisburg, W. Va., the coupons above mentioned, subject to the rights of Gibboney, and so much of the interest of Henry E. Crockett as had not been previously assigned in the bond aforesaid. The consideration for this assignment was the sum of $3,500 in cash.

In the progress of the cause in the lower court, Matthews, as a defendant, filed an answer asserting a claim to the bond and coupons by virtue of the assignment, and praying that his answer be treated, if necessary, as a cross-bill, which was ordered accordingly.

To this cross-bill J. Stuart Crockett, in his own right and as administrator and committee as aforesaid, filed an answer, which he prayed to be also treated as a cross-bill, charging that at the time of the assignment, the defendant, Matthews, was counsel to collect the claims thereby assigned; that he

took advantage of his position as counsel to defraud the complainant; that he withheld from him material information as to the value of the securities, and by concealment and misrepresentations obtained the assignment for a grossly inadequate consideration. And the prayer of the cross-bill was that the assignment be cancelled.

Matthews answered, denying that he was the complainant's counsel, as charged in the cross-bill. He averred that the complainant proposed to him to buy the securities, and that he bought the same for a fair consideration. He denied the charges of fraud, concealment and misrepresentation, and he denied generally the allegations of the cross-bill.

Testimony was taken, and the cause coming on to be heard, a decree was rendered declaring the assignment, so far as the coupons were concerned, to be null and void; and thereupon Matthews appealed.

*J. W. Caldwell*, for the appellant.

*J. A. Walker* and *D. S. Pierce*, for the appellees.

LEWIS, P. (after stating the case), delivered the opinion of the court.

We are of opinion that the decree is erroneous. A careful examination of the record leaves no room for doubt that the evidence, so far from overcoming sustains the answer of the appellant in every essential particular. It is unnecessary, therefore, to decide whether an attorney may lawfully purchase from his client, *pendente lite*, the subject matter of his employment (as to which, see *Rogers* v. *Marshall*, 3 McCrary, 76; 2 Lead. Cas. Eq., Pt. II, p. 1216 *et seq.*); for no such question properly arises in the present case.

The appellee, Crockett, claims that he employed the appellant as his counsel to collect the bond and coupons in question in the suit of *Gay, &c.* v. *White Sulphur Springs Co. &c.*, pending in the district court of the United States for the district of West Virginia, and that he so employed him in the fall of 1877. But this is not only denied by the appellant in his answer and in his deposition, but is disproved by the letters of the appellee himself, many of which are filed with the record.

Thus, in a letter written from Wytheville, dated January 16, 1878, after referring to certain other matters, he inquires of the appellant, whether he would "like to purchase a balance on three of the White Sulphur coupons (1861, '62, and '63)," and says: "They are held here by Mr. Gibboney and Robert Crockett in payment of some debts due by my mother's estate," and then he proceeds to give other information respecting them, which would have been wholly unnecessary if the appellant had been previously employed as counsel to collect them. And in a letter to the appellant, dated the 24th of the same month, he says: "I will arrange with Mr. Gibboney to get you to collect the bonds," meaning the coupons.

It also appears that in April, 1878, in response to a letter of the appellee, the appellant wrote expressing his willingness to act as counsel in several matters for the former, including the collection of the Gibboney coupons. At the same time he drew up a written agreement, stipulating for the measure of compensation for his services, which he transmitted to the appellee to be executed. But the latter, instead of executing and returning the agreement, copied it, taking care, however, to omit so much as related to the coupons; and this modified paper, with his signature attached, he enclosed to the appellant. Yet he files with his deposition, as evidence in the cause, the original draft of the agreement, signed by himself—when, it does not appear—but which never became a perfect instrument.

It also appears that he at one time deposited with the appellant "the Gibboney contract" as collateral security; that is, he pledged as collateral the interest of the estate of his testatrix in the coupons in question after satisfying the Gibboney debt. Subsequently their affairs, in respect to which the collateral was pledged, having been satisfactorily arranged, he wrote the appellant, saying: "I am now entitled to the Gibboney contract given you as collateral"; thus showing that the appellant held the contract, not as counsel for the collection of the coupons mentioned therein, but as collateral. This letter was dated December 18, 1879, less than one month prior to the assignment in question, and it is not pretended that the appellant was employed to collect the coupons after the date of that letter.

Moreover, the answer avers that prior to and until the assignment of the claims in question they "were represented as attorney and counsel solely and exclusively by the late Hon. Samuel Price," a distinguished member of the West Virginia bar; and the evidence tends to show, if it does not conclusively show, that such was the fact.

In addition to these facts there are other circumstances disclosed by the record tending to the same conclusion—namely, that the appellant was not at any time the counsel of the appellee in relation to the subject matter of the assignment in question.

The appellee, however, contends that no matter whether the relation of counsel and client existed between the parties or not, the assignment is void, because obtained by fraud. But here again the charge is not sustained by the proofs.

As to the price for which the sale was made, it is sufficient to say that an executed contract will not be set aside for mere inadequacy of consideration. It is only in those cases where the inadequacy of price is so gross as to lead to the irresistible inference of fraud that a sale made without imposition, between

parties standing on equal ground, will be rescinded by a court of equity. "And the inequality amounting to fraud must be so strong and manifest as to shock the conscience and confound the judgment of any man of common sense." Chancellor Kent in *Osgood* v. *Franklin*, 2 Johns. Ch. 1, 23.

"Where a legal capacity is shown to exist, that the party had sufficient understanding to clearly comprehend the nature of the business, that he consented freely to the special matter about which he was engaged, and no fraud or undue influence is shown to have been used to bring about the result, the validity of the disposition cannot be impeached, however unreasonable or imprudent or unaccountable it may seem to others. It is not the propriety or impropriety of the disposition, but the capacity to make it, and the fact that it was freely made with the full assent of the grantor, that must control the judgment of the court." *Greer* v. *Greers*, 9 Gratt. 330. See also *Eyre* v. *Potter*, 15 How. 42; *Dunn* v. *Chambers*, 4 Barbour, 376; *Orebs* v. *Jones*, 79 Va. 381.

In the light of these principles and the evidence in the case, the question as to alleged inadequacy of consideration may be laid out of view. Nor can the decree be sustained on the ground of actual fraud. In *Atlantic Delaine Co.* v. *James*, 94 U. S. 207, the court say: "Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear."

So, in *Hord* v. *Colbert*, 28 Gratt. 49, it is said that "the party alleging fraud must clearly and distinctly prove it. If the fraud is not strictly and clearly proved as it is alleged, although the party against whom relief is sought may not have been perfectly clear in his dealings, no relief can be had." See also *Gregory* v. *Peoples*, 80 Va. 355.

.These principles are now so firmly established in our juris-prudence as that they may be said to be axiomatic; and they are decisive of the present case. No question as to a *devastavit* and a fraudulent participation therein is made in the plead-ings or otherwise; and not only does the evidence fail to estab-lish the fraud alleged, but it does not warrant even a suspicion against the good faith and integrity of the appellant in the whole course of his dealing in relation to the matters in con-troversy. Nothing was concealed or misrepresented; all was fair and open. The record shows that the appellee had the means of knowing, and probably did know, as much in rela-tion to the value of the securities in question as the appellant did; and it shows, moreover, that the sale was deliberately made, without any undue influence being used by the appel-lant or by any other person. The order of the federal court capitalizing the interest on the coupons, to which reference is made in the cross-bill, was not entered until long after the assignment to the appellant, and there is nothing to show that such an order had been asked for, or even contemplated, before the assignment was made.

In short, the evidence disproves the charge of fraud, and the circuit court, instead of cancelling, ought to have upheld, the assignment, and decreed accordingly.

The decree will therefore be reversed, and a decree entered here in conformity with this opinion.

DECREE REVERSED.