92  211|
99  426|
s99  659|

## Staunton.

HOUCK'S ADM'R AND OTHERS v. DUNHAM & KERFOOT.

OCTOBER 10, 1895.

1. CHANCERY PRACTICE—*Decree for Account of Debts—Statute of Limitations.*—Although a suit in chancery is instituted for the purpose of auditing specific liens against the estate of a decedent, a decree directing an account of all debts outstanding and unpaid against said estate renders the suit one for the benefit of the general creditors of the estate, and the statute of limitations ceases to run against their claims from the date of the entry of the decree.

2. CHANCERY PRACTICE—*Stale Demands—Laches.*—A court of equity will, as a rule, refuse its aid to enforce stale demands, but where the claim is not barred by the statute of limitations, the amount is certain, the transaction is not obscure, and it is not likely that injustice will be done owing to the loss of evidence or the lapse of time, and the claimant has not been guilty of such *laches* as should deprive him of his rights, the court will grant relief.

Appeal from a decree of the Circuit Court of Rockingham county, pronounced April 21, 1893.

*Affirmed.*

The opinion states the case.

*John E. Roller* and *George G. Grattan*, for the appellants.

*W. B. Compton*, for the appellees.

HARRISON, J., delivered the opinion of the court.

In August, 1856, Andrew Houck, who was a merchant in

the town of Harrisonburg, executed a deed of trust to John C. Woodson, trustee, conveying valuable real estate and a large amount of valuable personal property, including all his interest in the mercantile firm of Houck & Melhorn, to secure a large number of debts set forth in the deed. The property conveyed was to be reduced to money, as far as necessary, according to certain terms prescribed, and applied to the payment of the debts secured, in classes. With the consent of all parties concerned, the property was left in the hands of the grantor, to be by him administered according to the terms of the deed of trust.

In 1858 Dunham & Kerfoot obtained two judgments in the Circuit Court of Rockingham county against Andrew Houck and John W. Melhorn, partners doing business as Houck & Melhorn, each for $300 and interest.

In 1860 Reuben and Daniel Huffman obtained judgment in the same court against William K. Gailey and Andrew Houck for $172.04 and interest.

The debts upon which the Dunham & Kerfoot judgments were obtained appear to have been contracted after the deed of trust from Houck to Woodson was made. The controversy in this case is between the Dunham & Kerfoot judgments and the Reuben and Daniel Huffman judgment, as to which is entitled to the benefit of a small remnant of fund under the control of the court, arising from the sale of the real estate of Andrew Houck conveyed in the trust deed to John C. Woodson, after the debts secured in that deed were paid.

It appears that Andrew Houck died in 1862, and in the year 1869 John C. Woodson, trustee, having advertised for sale the real estate conveyed to him, the widow and heirs of Andrew Houck filed their bill, and obtained from the Circuit Court of Rockingham an injunction against the sale, alleging that many of the debts secured in the deed of trust had been paid, and that it was contemplated that the personal

property dedicated by the deed should be applied to the debts before the real estate was sold. In response to the prayer of this bill, the case was referred to a master to ascertain the personal property unadministered, what debts had been paid, and to audit and report to the court all unpaid debts secured in the deed of trust.

In 1873 nothing had been done under this order, when Harriet Rufner's trustee filed her bill to enforce payment of a vendor's lien held by her on one piece of the real estate conveyed in the deed of trust, and in 1874 these two causes were heard together, and referred to a master, with directions to take the accounts required by the order already made in the first case. In response to this order, a report was made of debts due under the deed of trust, and certain other debts against the estate of Andrew Houck; among others, the judgment in favor of Reuben and Daniel Huffman.

In September, 1875, a decree was entered recommitting both causes to the master, with directions to audit and report to the court all the debts outstanding and unpaid against the estate of Andrew Houck, deceased.

After this decree, two reports were made of debts and other matters, the last being in 1879, when the causes were again recommitted to the master, with instructions to report additional debts against the estate of Andrew Houck, deceased. Nothing was done under this order, and again, in 1885, another order was entered calling for a report of the debts. Again no report was made, and in 1892, on motion of the administrator of the surviving partner of Dunham & Kerfoot, another order was entered, requiring one of the master commissioners of the court to make and file in the papers, on or before the 15th day of March, 1893, an account as required by the decrees theretofore entered. In response to this decree, a report was filed, auditing the two judgments in favor of Dunham & Kerfoot, and settling the accounts of

the receiver of the court, showing a balance in his hands, after the payment of the debts secured in the deed of trust, of $259.33, with interest from April 5, 1877. Exceptions were taken to this report and overruled, and the decree appealed from entered, which declares that the two judgments audited in favor of Dunham & Kerfoot were valid and subsisting liens against the real estate of Andrew Houck, deceased, and directing the receiver to apply the balance in his hands to their payment. The appellants insist that the court erred in refusing to apply the bar of the statute of limitations to the judgments audited in favor of Dunham & Kerfoot.

This proceeding, as originally instituted, seems to have been only intended to secure a settlement of the Andrew Houck trust deed matters, and to have the debts against his estate, secured in that deed, audited; but, in September, 1875, a decree was entered in the cause, referring it to a master, with directions to report all the outstanding and unsatisfied debts against the estate of Andrew Houck, deceased. This decree made the suit one for the benefit of the general creditors of the estate, and restrained them from proceeding afterwards by separate suits to enforce their claims; and from its date the statute of limitations ceased to run against their claims. *Harvey's Adm'r* v. *Steptoe's Adm'r*, 17 Gratt. 289; *Ewing's Adm'r* v. *Ferguson's Adm'r*, 33 Gratt. 548. These two judgments were obtained in 1858. Computing the time from their date until the general order of reference was made in September, 1875, when the statute ceased to run, and deducting the stay law suspension of time from 1861 to 1869, and also from January 1, 1869, to March 29, 1871, (Code 1873, ch. 182, sec. 12,) and the time left is not sufficient to bar their recovery.

It is further insisted by the appellants that these judgments should have been rejected, because of the lapse of time, loss

of evidence, death of parties, and *laches* of the holder in prosecuting his claims. It is true that a court of equity will refuse its aid to enforce stale demands when the party has slept upon his rights and acquiesced for an unreasonable length of time. This is a well-recognized and salutary rule. Whether, however, lapse of time is sufficient to bar recovery, must of necessity depend upon the peculiar circumstances of each case.

The commissioner, in reporting these judgments, says that no evidence has been produced showing their payment, either by Andrew Houck in his lifetime, or by his administrator since his death, and that there is no ground to presume that they have been paid.

After a careful examination of this record, we have been unable to find anything upon which to base a different conclusion from that reached by the commissioner. There has been no such loss of evidence, or lapse of time, as to make it likely that injustice will be done. The transaction is not obscure, and the sum sought to be recovered is not uncertain. Nor has there been such *laches* on the part of the appellees in prosecuting their claim as to deprive them of the right to recover. After the expiration of the period covered by the stay law, they found the estate of the judgment debtor being administered in a chancery suit, in which there seems to have been great delay, especially in getting a report of debts, and without any fault of the appellees. The judgments held by appellees are prior in time to those held by appellants, and there is no sufficient reason why they should not be first paid.

For the foregoing reasons, we are of opinion that there is no error in the decree appealed from, and it is affirmed.

*Affirmed.*