| 99 | 421 |
| f99 | 439 |
| 99 | 421 |
| 100 | 122 |

## Wytheville.

### Nelson v. Triplett, Trustee.

#### June 20, 1901.

1. Statute of Limitations—*Unsuccessful Action of Ejectment.*—An unsuccessful action of ejectment does not stop the running of the statute of limitations against the plaintiff's claim.

2. Chancery Practice—*Laches.*—When, from delay, any conclusion that the court might arrive at must, at best, be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence and death of parties as to render it difficult, if not impossible, to do justice, a court of equity will not interfere, whatever may have been the original justice of the claim.

Appeal from a decree of the Circuit Court of Culpeper county, pronounced June 24, 1899, on a petition filed by the appellee in the chancery causes of *Triplett and Wife* v. *Bruce* and *Hopper, Guardian,* v. *Bowen,* to which petition the appellant and another were the defendants.

*Reversed.*

The opinion states the case as fully as it can be gathered from the record.

*W. L. Jeffries* and *G. D. Gray,* for the appellant.

*Hay, Jeffries & Perry* and *Grimsley & Miller,* for the appellee.

Cardwell, J., delivered the opinion of the court.

This cause is the sequel of the case of *Nelson* v. *Triplett, Trustee, &c.,* decided by this court December 10, 1885, and re-

ported in 81 Va. 236. In that case Bushrod Triplett, trustee, and others, brought their action in ejectment in 1881 to recover of L. P. Nelson, appellant here, the tract of land which is the subject of litigation in this suit. They obtained a judgment in the Circuit Court, but it was reversed and annulled by this court, and judgment given for the defendant, without prejudice to the plaintiffs to resort to a court of chancery if they should be advised to do so.

In November, 1894, Bushrod Triplett, trustee for his wife, Frances A. Triplett, and their children, filed his petition in the chancery suits of *Hopper, Guardian,* v. *Bowen* and *Triplett, Trustee,* v. *Bruce,* pending in the Circuit Court of Culpeper county, and heard together, in which he sought to set up a lien for $1,425, with interest from January 1, 1874, on the land in controversy, in the possession of appellant, who, together with Thomas R. Rixey's administrator, were made parties defendant to the petition.

It appears that on the 18th day of April, 1862, one Paul L. Bowen purchased of Thomas R. Rixey the said tract of land, which contains 242¼ acres, and executed in payment therefor five bonds of $1,009.00 each, payable in one, two, three, four, and five years, respectively, from their date, and five other bonds for different amounts for the interest thereon. At the same time that the property was conveyed to Bowen he reconveyed it to Henry Shackleford, in trust, to secure the payment of all of said bonds. Bowen in his lifetime paid but a small portion of the purchase money for the land, and after his death the suit of *Hopper, Guardian,* v. *Bowen* was brought in the Circuit Court of Culpeper county against Bowen's representatives to enforce the payment of the unpaid purchase money due to Thomas R. Rixey, with the view of satisfying the balance of the debt due to Rixey, and thereby save to Bowen's heirs another small parcel of land as a home for his family.

A number of ineffectual efforts were made under the decrees

of the court in that case to sell the land, and finally, on October 22, 1867, Thomas R. Rixey entered into an agreement with Bushrod Triplett, trustee for his wife and children, to sell Triplett, trustee, &c., the land at the price of $4,147.00 in full of Rixey's lien thereon due from Bowen's estate, and this sale, upon being reported to the court, in *Hopper, Guardian,* v. *Bowen,* was confirmed, and a commissioner directed to convey the land to Rixey, upon his delivering up to the commissioner the bonds of Bowen secured on the land, to be filed with the papers in the cause. These bonds were filed with the papers in the cause, but it does not appear that a deed reconveying the land to Rixey was ever made.

By another contract entered into between Thomas R. Rixey and Triplett, trustee, &c., June 28, 1869, it was agreed that a certain trust fund held by Triplett, trustee, &c., under the control of the Circuit Court of Rappahannock county, in the suit of *Triplett and Wife* v. *Bruce,* was to be used in part payment of the purchase money for the land Rixey agreed to sell Triplett, trustee, &c., as per the contract of October 22, 1867, Rixey agreeing that if Triplett failed to pay the residue of the purchase money, or failed to get a title to the land, the amount of the purchase money paid out of the trust fund under the control of the court in the suit of *Triplett and Wife* v. *Bruce,* should constitute a first lien on the land for the benefit of Triplett's wife and children, according to the terms upon which said trust fund was held under the control of the Circuit Court of Rappahannock county. A decree was entered in *Triplett and Wife* v. *Bruce,* authorizing the application of the trust fund under the control of the court to be used in payment of the purchase money for the Culpeper land, but it does not appear that Triplett, trustee, who, by the terms of his contract with Rixey, was to pay off the lien held by Rixey for unpaid purchase money due on the land before the lien was to be released, ever paid the amount due, or more than a small portion of it. On the contrary, it is clear that he did not pay more than $893.50.

It is this lien stipulated for in the contract of June 28, 1869, that Triplett, trustee, seeks to enforce in this suit, and it is from a decree of the Circuit Court of Culpeper in his favor enforcing a lien on the land for the sum of $893.14, with interest thereon from January 1, 1874, that Nelson appeals to this court.

The question presented is not whether appellant holds a good and valid title to the land in question, but, whether under all the circumstances of the case, a court of equity should afford appellee the relief he seeks?

In addition to the facts already stated, it appears from the records in this case, and that of *Nelson* v. *Triplett, Trustee*, that Thomas R. Rixey on the 16th of September, 1872, conveyed this land to Thomas P. Rixey to secure the payment of $500 to Mary F. Cole and her heirs, and that under that deed the land was sold to Bushrod Triplett, trustee, and others, for the sum of $2,018.00, and deeded to the purchasers by F. M. Latham and J. L. Jeffries, sub-trustees, on April 29, 1881, but not one dollar of the purchase money was paid, except by allowing the purchasers to retain it, on account of their supposed prior liens upon the land, due from Thomas R. Rixey; Triplett, trustee, executing his obligation to the sub-trustees, Latham and Jeffries, that "if at any time it should be decided by the proper legal authorities that Latham and Jeffries, trustees, have improperly paid to us or either of us the sums aforesaid on our debts, we agree that the sale and the deed to us shall be null and void," &c.

These so-called purchasers were never in possession of the land, and the debt due from Paul L. Bowen to Thomas R. Rixey for the purchase money had not then and has not since been paid, and the legal title has never been reconveyed to Rixey from Bowen's heirs. In the meantime, Rixey, on the 21st day of January, 1874, by deed duly recorded, conveyed this land, or all the right, title, or interest he had therein, and assigned the bond of Bowen held by him, and secured by the deed to Shackleford, trustee, to James W. Green, in trust, to secure L.

P. Nelson (appellant here) a debt of $1,237.74, with interest at 8 *per cent.*, and to indemnify Nelson against loss as surety for Rixey on a bond of $232.00, held by Elizabeth O'Bannon. On June 16, 1877, appellant obtained from the clerk of the County Court of Culpeper a deed for this land for taxes assessed thereon in the name of Paul L. Bowen, and he took immediate possession of it, and has held the same openly, continuously, and adversely ever since, receiving the rents and profits therefrom, and paying the taxes thereon.

The contract by force of which appellee asserts a lien on the land was never recorded in the county of Culpeper, and it is not pretended that appellant had any sort of notice of it, until long after the conveyance of the land, and the assignment of the Bowen bonds by Rixey to Green, trustee, to secure appellant, and after the deed from the clerk to him, were executed and recorded.

So that appellant's rights in this land, and his possession thereof, were acquired without notice, either actual or constructive, of any lien thereon in favor of appellee, and no effort has been made by the latter to enforce his alleged lien until the filing of his petition in November, 1894, over seventeen years after appellant had acquired possession, more than ten years after the decision of this court in the ejectment suit, and twenty-five years after the alleged lien was created. Failing in his claim of title to the land, as to which he never had possession or the right of possession, appellee falls back upon a lien by contract of over twenty-five years' standing, never recorded in the county in which the land is situated on which he claims the lien, and never brought to the knowledge of appellant until long after he had acquired title by assignment of the Bowen bonds secured on the land, and the possession of it under his deed made in 1877.

Appellee's unsuccessful action of ejectment led to no change in the possession of the land, and did not stop the running of the statute of limitations. *Woodman* v. *Guthrie*, 29 Penn. St.

495, and authorities cited. Leaving out of view the statute of limitations in such cases, a court of equity will refuse its aid to enforce stale demands, when the party asserting such a demand has slept upon his rights and acquiesced for an unreasonable length of time. While no fixed rule has been or can be laid down to govern in determining what lapse of time should be deemed sufficient to bar a recovery, as this must, of necessity, depend upon the particular circumstances of each case, it is well settled that when, from delay, any conclusion that the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence and death of parties, as to render it difficult, if not impossible, to do justice, the plaintiff will by his laches be precluded from relief, and it is not even necessary that the court should be satisfied that the original claim was unjust or has been satisfied.

If, under the circumstances of the case, it is too late to ascertain the merits of the controversy, the court will not interfere, whatever may have been the original justice of the claim. *Tazewell's Ex'ors* v. *Saunders, &c.*, 13 Gratt., 354; *Harrison* v. *Gibson*, 23 Gratt. 223; *Hatcher* v. *Hall*, 77 Va. 573; *Terry* v. *Fontaine*, 83 Va. 451; *Houck* v. *Dunham*, 92 Va. 215; *Covington* v. *Griffin*, 98 Va. 127; *Bell* v. *Wood*, 94 Va. 677.

These equitable and salutary principles are peculiarly applicable to this case. Appellee does not pretend to set forth what were the impediments, if any, to an earlier prosecution of the claim he asserts. Thomas R. Rixey died in April, 1881, thirteen years before appellee's petition was filed, and others who participated in the various, beclouded, and complicated transactions concerning the land in question have passed away, and if it be not clear that appellee wholly abandoned his contract with Rixey soon after it was made, his subsequent course with reference to it and the land as to which he asserts the lien is wholly inconsistent with his having a right to enforce the lien. At all events, the facts and circumstances surrounding the case

Opinion.

are such as to render it difficult, if not impossible, to do justice between the parties.

We are of opinion, therefore, that the decree appealed from is erroneous, and should be reversed and annulled, and this court will enter such decree as the Circuit Court should have entered, dismissing appellee's petition with costs to appellant.

*Reversed.*